# OREGON *v.* JENNINGS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
                NORTHERN DISTRICT OF ILLINOIS.

Submitted October 19, 1886. — Decided November 15, 1886.

Bonds issued by a town in Illinois, signed by its supervisor and town clerk,
    as a donation to a railroad company, stated that the faith, credit, and
    property of the town were thereby pledged, " under authority of" an Act
    of the General Assembly of the State, giving its title and date, and each
    bond also stated that it and other bonds, giving their numbers and
    amounts, were "the only bonds issued by said town," " under and by vir-
    tue of said Act." The Act prescribed the general route of the road, and
    authorized the town to make a donation to the company, to aid in con-
    structing and equipping the road, if the donation should be voted for as
    prescribed. It provided for a written application by voters to the town
    clerk to have an election held, and the giving by him of notice of the
    election; that the election should "be held and conducted and return
    thereof made as is provided by law; " and that, if a majority of the legal
    voters voting should vote for the donation, the town should, "by its
    proper corporate authorities," make the donation, as should "be deter-
    mined at said election," and should issue to the company its bonds,
    " signed by the supervisor and countersigned by the clerk," and should,
    "by its proper corporate authority," levy an annual tax to pay interest
    and principal. The application was made, and the notice given, and the
    election was held and presided over, not by the election judges of the
    town, but by a moderator and the town clerk, in the manner required
    for the election of town officers, and resulted in a majority for the dona-
    tion. The terms of the vote were that the bonds should not be issued,
    and the vote should be void, unless the road was completed by a day
    specified. The road was not completed by that day. The supervisor
    and one of the two justices of the town having resigned, the other jus-
    tice and the town clerk, on the day before an election for a justice was
    to be held, appointed a new supervisor, ante-dating the appointment
    papers more than three months, to the day after the supervisor resigned,
    and the new supervisor, and the town clerk, on the same day, signed the
    bonds and delivered them to the company. The next day a new justice
    and a new supervisor were elected by the people. In a suit against the
    town, to recover on coupons cut from the bonds, by a *bona fide* holder of
    the bonds and coupons for a valuable consideration, without notice, it
    was set up in defence, that the officers of the company conspired with
    the justice and the town clerk, and their appointee, to have the bonds
    issued before a new supervisor should be elected by the people: *Held,*

Statement of Facts.

(1) The bonds were not void, as having been executed through "fraud or circumvention," under the statute of Illinois, Gross' Stat., 1869, vol. 1, 3d ed., c. 73, p. 462, § 11.

(2) The appointment of the supervisor was valid.

(3) The bonds were issued in compliance with a vote of the people held prior to the adoption of the Illinois Constitution of 1870, in pursuance of a law providing therefor, within the meaning of section 12, of article 9, of that Constitution, although the condition as to the completion of the road was not complied with, because, as against the plaintiff, the recitals in the bonds were made by officers entrusted under the statute, with the duty of determining whether the condition had been complied with, and the town was thereby estopped from asserting the contrary.

(4) The election was properly held, though presided over by a moderator, and the donation was, therefore, authorized under existing laws, by a vote prior to the adoption of additional section or article 2 to the Constitution of Illinois, within the meaning of that section.

This was an action at law brought in the Circuit Court of the United States for the Northern District of Illinois, by Eliza Jennings, against the town of Oregon, a municipal corporation in the county of Ogle, and State of Illinois, to recover $13,510, the amount payable by 193 coupons of $70 each, cut from 24 bonds for $1000 each, purporting to have been issued by that town. The following is a copy of one of the bonds, all being alike except as to the number, and the time when due:

"UNITED STATES OF AMERICA.

No. 29.     *State of Illinois, County of Ogle.*     $1000.

OREGON TOWN BOND.

Know all men by these presents, that the town of Oregon, in the county of Ogle, and State of Illinois, is indebted to the Ogle and Carroll County Railroad Company in the full and just sum of one thousand dollars, which sum of money said town agrees and promises to pay on or before the first day of July, 1883, to the said Ogle and Carroll County Railroad Company, or bearer, with interest at the rate of seven per cent. per annum, payable annually, on the first day of July, at the office of the Farmers' Loan and Trust Company of New York, in the City of New York, upon the delivery of the coupons severally hereto annexed, for which payment of principal and

interest, well and truly to be made, the faith, credit, and property of said town of Oregon are hereby solemnly pledged, under authority of an Act of the General Assembly of the State of. Illinois, entitled 'An Act to amend an Act entitled An Act to incorporate the Ogle and Carroll County Railroad Company,' which said Act was approved March 30, 1869.

This bond is one of a series, numbering from 21 to 60, inclusive, for $1000 each, which bonds, so numbered, together with another series numbered from 1 to 20, inclusive, for $500 each, are the only bonds issued by said town of Oregon under and by virtue of said Act.

In witness whereof, the supervisor and town clerk of the said town of Oregon have hereunto set their hands, this thirty first day of December, A.D. 1870.

FRED. H. MARSH, *Town Clerk.*    E. S. POTTER, *Supervisor.*"

The date in each bond, "thirty first day of December, A.D., 1870," is lithographed, like the body of the bond.

On the back of each bond is the following certificate:

"AUDITOR'S OFFICE, Illinois,

SPRINGFIELD, *June* 5, 1871.

I, Charles E. Lippincott, Auditor of Public Accounts of the State of Illinois, do hereby certify that the within bond has been registered in this office this day, pursuant to the provisions of an Act entitled 'An Act to fund and provide for paying the railroad debts of counties, townships, cities and towns,' in force April 16, 1869.

In testimony whereof, I have hereunto subscribed my name, and affixed the seal of my office the day and year aforesaid.

[SEAL.]                    C. E. LIPPINCOTT, *Auditor, P. A.*"

The coupons are in the following form, varying as to number of bond and date of payment:

"State of Illinois, County of Ogle.   The Town of Oregon will pay to the Ogle and Carroll County Railroad Company, or bearer, Seventy Dollars at the office of the Farmers' Loan

& Trust Company of New York, in the City of New York, on the first day of July, 1873, on presentation, being one year's interest on bond No. 29.

F. H. MARSH, *Clerk.*　　　　　E. S. POTTER, *Supervisor.*"

The action was tried by a jury, which, under the instruction of the court to do so, found a verdict for the plaintiff, for $20,823.68, and a judgment in her favor was rendered for that amount, with costs. The defendant sued out a writ of error.

On the 30th of March, 1869, the Legislature of Illinois passed an Act, Private Laws of Illinois, of 1869, vol. 3, p. 324, with the title set forth in the bonds, and providing as follows:

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That the several Acts entitled ' An Act to incorporate the Ogle and Carroll County Railroad Company,' approved February 18, 1857, and the Act entitled ' An Act to amend an Act entitled An Act to incorporate the Ogle and Carroll County Railroad Company,' approved February 24, 1859, be and they are hereby so amended that the said railroad company shall be authorized and empowered to construct, maintain, and operate their said railroad, with such appendages as may be deemed necessary by the directors, in accordance with the following provisions.

§ 2. That the first division of said road shall commence on the east bank of Rock River, opposite the town of Oregon, in said county of Ogle; from thence, on the most eligible route, to a connection with the Chicago and Northwestern Railway, or with any other railroad leading to the City of Chicago, and the second division commencing at said point, opposite the said town of Oregon, and running thence, in a westerly direction, on the most eligible route, to the Mississippi River."

"§ 5. That the several towns, villages, and cities, organized or incorporated under any laws of this State, along or near the route of said railroad, as authorized to be constructed under the original Act and amendment thereto or under this Act, or that are in anywise interested in having said road or any branch or division thereof constructed, may, in their corporate capacities, subscribe to the stock of said company, or may

make donations thereto, or may lend its or their credit to said company, to aid in constructing and equipping said road, or any division or branch thereof : *Provided*, That no such subscription, donation, or loan shall be made until the same shall be voted for as hereinafter provided.

§ 6. That whenever twenty legal voters of any such towns, villages, or city shall present to the clerk thereof a written application, requesting that an election shall be held to determine whether such town, village, or city shall subscribe to the capital stock of said company, or make a donation thereto, or loan money or bonds or its credit, to aid in the construction of said road, or any branch or division thereof, stating the amount and whether subscribed, donated, or loaned, and the rate of interest, and the time of payment, such clerk shall receive and file such application, and immediately proceed to post written notices of an election to be held by the legal voters of such town, village, or city, which notices shall be posted in ten of the most public places in such town, village, or city, for thirty days preceding such election, and shall state fully the object of such election ; and such election shall be held and conducted and return thereof made as is provided by law, and, in any village or city, as is provided by the law under which the same is incorporated, and an additional return shall be made to one of the directors of said company. Each elector at such election shall deposit a ballot for said subscription, donation, or loan ; and if a majority of the legal voters of such town, village, or city, voting at such election, shall vote for such subscription, donation, or loan, then such town, village, or city shall, by its proper corporate authorities, subscribe to the stock of said company, or donate or loan thereto, as shall be determined at said election, and shall issue to the said railroad company its bonds, in such denominations as said company may designate, not less than one hundred dollars, and bearing interest as may be determined at such election, not to exceed ten per cent. per annum, payable annually at such place as such company may designate, which bonds shall be signed by the supervisor and countersigned by the clerk in towns organized under the township organization law, and

in incorporated villages or cities, signed by the president of the board of trustees and countersigned by the clerk or by the officers having similar powers and duties in any such village or city, and any such town, village, or city so subscribing, donating, or loaning, as aforesaid, shall by its proper corporate authority, annually thereafter, assess and levy a tax upon the taxable property of said town, village, or city, sufficient to pay and liquidate the annually accruing interest on such bonds, and so much of the principal thereof as, from time to time, shall become due, which taxes shall be levied and collected in the same manner as other corporation taxes in such town, village, or city : *Provided,* That for the payment of the principal thereof such tax shall not exceed two per cent. per annum."

The town of Oregon was and is an incorporated town or township situated on both sides, east and west, of Rock River, and embracing within its limits a village called Oregon, on the west bank of the river, which village was and is what is called "the town of Oregon" in the second section of the above Act. The town was such a town as is described in the fifth section of the Act.

On the 24th of May, 1870, more than twenty legal voters of the town presented to the clerk of the town the following written application, signed by them, in conformity with section six of the Act :

*" To the Town Clerk of the Town of Oregon, in the County of Ogle, and State of Illinois :*

The undersigned, legal voters of the said town of Oregon, in the county and State aforesaid, do hereby make application to you, and request that an election shall be held in said town, under the provisions of an Act of the General Assembly of the State of Illinois, entitled 'An Act to amend an Act entitled An Act to incorporate the Ogle and Carroll County Railroad Company,' approved March 30th, A.D. 1869, to determine whether said town shall, in its corporate capacity, make a donation to the said Ogle and Carroll County Railroad Company of the sum of forty thousand dollars in the bonds of said town, in such denominations as said company may designate, '

not less than one hundred dollars each, payable, at the option of said town, within twenty years from the date of their issue, bearing interest from date at the rate of seven per cent. per annum, payable annually, and principal and interest payable at such place as said company may designate, to aid in the construction of the first division of said Ogle and Carroll County Railroad; said bonds not to be issued, dated or delivered until said company shall have completed said first division of said railroad, with a T rail weighing not less than forty five pounds to the yard, in condition to run trains thereon from a connection or intersection with the Chicago and Northwestern Railway to a point at and within said town of Oregon, within one half-mile of the east bank of Rock River, and shall have equipped the same with rolling-stock sufficient to operate a daily train to and from said town for the accommodation of passengers and freight, nor until said company shall have released said town from all liabilities on account of donations heretofore voted, except a donation of ten thousand dollars voted by said town on the ninth day of December, A.D. 1869, said vote and donation of forty thousand dollars to be null and void unless said first division of said railroad shall be completed and equipped as aforesaid on or before the first day of January, A.D. 1871; but in case the same shall be so completed and equipped within the time aforesaid, and said company shall execute and deliver said release, then the said bonds to be deliverable upon the demand of said company, and to bear date of the day of delivery.

And we request that immediate notice be given of such election, and that the same be held on the 23d day of June, A.D. 1870.

Dated this 24th day of May, A.D. 1870."

The clerk received and filed the application, and gave the notice required by section six of the Act, of an election to be held June 23d, 1870, the notice being as follows:

## "Election Notice.

Whereas more than twenty legal voters of the town of Oregon, in the county of Ogle, and State of Illinois, have

presented to me, clerk of said town, a written application requesting that an election be held in said town under the provisions of an act of the General Assembly of the State of Illinois, entitled 'An Act to amend an Act entitled An Act to incorporate the Ogle and Carroll Railroad Company,' approved March 30th, 1869, to determine whether said town shall, in its corporate capacity, make a donation to the said Ogle and Carroll County Railroad Company, of the sum of forty thousand dollars in the bonds of said town, in such denominations as said company may designate, not less than one hundred dollars each, payable at the option of said town, within twenty years from the date of issue, bearing interest from date at the rate of seven per cent. per annum, payable annually, and principal and interest payable at such place as said company may designate, to aid in the construction of the first division of said Ogle and Carroll County Railroad, said bonds not to be issued, dated or delivered until said company shall have completed said first division of said railroad, with a T rail weighing not less than forty five pounds to the yard, in condition to run trains thereon from a connection or intersection with the Chicago and Northwestern Railway, to a point at and within said town of Oregon, within one half mile of the east bank of Rock River, and shall have equipped the same with rolling stock sufficient to operate a daily train to and from said town for the accommodation of passengers and freight, nor until said company shall have released said town from all liability on account of donations heretofore voted, except a donation of ten thousand dollars voted by said town on the ninth day of December, A.D. 1869, said vote of forty thousand dollars to be null and void unless said first division of said railroad shall be completed and equipped as aforesaid, on or before the first day of January, A.D. 1871, but in case the same shall be so completed and equipped within the time aforesaid, and said company shall execute and deliver said release, then the said bonds to be deliverable upon demand of said company, and to bear date of the day of delivery.

The inhabitants, legal voters of the said town of Oregon, are therefore hereby notified that an election will be held by

the legal voters of said town, at the court house in said town of Oregon, on Thursday, the 23d day of June, A.D. 1870, at 9 o'clock in the forenoon of said day, for the object and purpose of voting upon and determining the matters and questions hereinbefore and in said written application set forth and contained.

Given under my hand, at my office in said town of Oregon, this 24th day of May, A.D. 1870.

F. H. MARSH, *Town Clerk of said Town."*

The election was held on the day, in the manner and with the result stated in the following record on file in the office of the town clerk:

"Pursuant to notice given according to law, the voters of the town of Oregon, county of Ogle, and State of Illinois, assembled at the court house in Oregon, at 9 o'clock A.M., on Thursday, the 23d day of June, A.D. 1870. The meeting was called to order by the town clerk, and, on motion of W. J. Mix, E. J. Reiman was chosen moderator of said meeting, and was duly sworn by the town clerk. Proclamation was then made of the opening of the polls, which were kept open until 12 o'clock M., when, on motion of O. Wilson, they were closed for one hour, until one o'clock, for dinner, by proclamation of the town clerk. At one o'clock the polls were again proclaimed open, and were kept open until six o'clock P.M., proclamation being made half hour before the closing of the polls. At the hour of six P.M. the moderator proceeded to count out the ballots, until they were all counted, which number equalled the numbers on the poll-list. The ballots were then read by the moderator, and resulted as follows: there being for donation, as stated in the notice, one hundred and sixty three votes; against donation, as stated in the notice, twelve votes. The result being publicly read, the meeting was then closed.

E. J. REIMAN, *Moderator.*

Attest: F. H. MARSH, *Town Clerk."*

A defence set up to the validity of the bonds, in the amended second plea, is, that their execution was obtained by fraud and circumvention. This is founded on the following facts: The first division of the road was not completed or equipped in accordance with the application, and the notice of election, and the vote, on or before the 1st of January, 1871, but was completed by the 1st of April, 1871. On the 30th of December, 1870, Mortimer W. Smith, supervisor of the town, gave to the town clerk of the town his written resignation of the office of supervisor, and it was placed among the records of the town clerk's office. He never afterwards acted as supervisor. The town had by law one supervisor and two justices of the peace and one town clerk. They were all of them, by statute, town officers. William Schultz was elected one of the justices of the town April 5th, 1870, and duly qualified as such April 9th, 1870. He continued to reside in the town until after April 3d, 1871, and during the year 1871, but was absent from the town, and in the city of New York, from December 26th, 1870, till about January 6th, 1871. He resigned his office on March 2d, 1871, by filing his resignation in the office of the clerk of the county, who entered it of record according to law. After that he did not act as a justice. A successor to Schultz as a justice was elected by the people at the annual town meeting held April 4th, 1871, and not before, and such successor qualified April 8th, 1871, and was commissioned April 15th, 1871. James H. Cartwright was the other justice of the peace. Frederick H. Marsh was the town clerk.

The following statutory provisions were in force in Illinois in 1870 and 1871: "§ 16. Resignations of the office of justice of the peace and constable shall be made to the clerk of the court of the proper county, who shall immediately enter the date of every such resignation in the book above provided for;" (that is, a book to be kept by the clerk of the county, in which he was required to enter the name of every justice of the peace and constable sworn into office, together with the date of his commission or certificate, and the time of his being sworn into office;) "which book, or a certified copy of an

entry in the same, shall be received in evidence in all Courts within this State." Gross' Stat., 1869, vol. 1, 3d ed., c. 59, p. 394. "1. Whenever any town shall fail to elect the proper number of town officers, to which such town may be entitled by law, or when any person elected to any town office shall fail to qualify as such, or whenever any vacancy shall happen in any town office from death, resignation, removal from the town, or other cause, it shall be lawful for the justices of the peace of the town, together with the supervisor and town clerk, to fill the vacancy or vacancies occasioned or occurring in consequence of either or any of the causes above specified, by appointment by warrant under their hands and seals; and the persons so appointed shall hold their respective offices during the unexpired term of the persons in whose stead they have been appointed, and until others are chosen or appointed in their places, and shall have the same powers and be subject to the same duties and penalties as if they had been duly chosen by the electors. 2. Whenever a vacancy shall occur, from any cause, in any or either of the offices enumerated in the foregoing section, as composing the board of appointment for the appointment of town officers, in case of vacancy, it shall be lawful for the remaining officers of such appointing board to fill any vacancy or vacancies thus occurring, except in cases of vacancy in the office of justice of the peace, which shall be filled only by election. 3. When any appointment shall be made, as provided in the two preceding sections, the officers making the same shall cause the warrant of appointment to be forthwith filed in the office of the town clerk, who shall forthwith give notice to each person appointed." Gross' Stat., 1869, vol. 1, 3d ed., c. 103 d, art. 7, pp. 750, 751.

On the 3d of April, 1871, Cartwright, (the remaining justice,) and Marsh, (the town clerk,) met at the office of the town clerk, and, by a paper then signed by each of them, appointed Elias S. Potter to fill the vacancy in the office of supervisor, caused by the resignation of Smith, and ordered the clerk to give the certificate of appointment to Potter. The paper bore date the 31st of December, 1870, and was filed in the office of the town clerk on the 3d of April, 1871. On the same 3d of April,

a proper official bond, executed on that day by Potter and two sureties, but bearing date the 31st of December, 1870, was filed in the office of the town clerk, with an oath of office signed and sworn to by Potter before Cartwright on the same 3d of April, but purporting to have been subscribed and sworn to on the 31st of December, 1870. On the same 3d of April, Potter, as supervisor, and Marsh, as town clerk, signed the bonds and the coupons, and delivered them to the president of the railroad company. One Dwight was elected supervisor of the town at the regular annual town meeting, held on April 4th, 1871, and assumed the office April 10th, 1871, and held it for the ensuing year. It was known to all parties that this town meeting was to be held, and it is alleged that the officers of the railroad company conspired with Cartwright and Marsh to procure the appointment of Potter as supervisor, so that the bonds might be issued before the election by the people of a new supervisor on April 4th, 1871.

The statute of Illinois, as to fraud and circumvention, set up and relied on, is as follows: "11. If any fraud or circumvention be used, in obtaining the making or executing of any of the instruments aforesaid," (that is, any note, bond, bill, or other instrument in writing, for the payment of money or property, or the performance of covenants or conditions,) "such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee or assignees of such instrument." Gross' Stat., 1869, vol. 1, 3d ed., c. 73, p. 462.

*Mr. James K. Edsall* for plaintiff in error.

I. Under Rev. Stat. Ill. § 11, c. 73, the defence that the making or execution of an instrument was obtained by fraud is good against a *bona fide* holder for value, to whom it was transferred before maturity without notice of the alleged fraud. It is otherwise where the fraud relates solely to the consideration. *Hubbard* v. *Rankin,* 71 Ill. 129; *Taylor* v. *Atchison,* 54 Ill. 196; *Vanbrunt* v. *Singley,* 85 Ill. 281; *Richardson* v. *Schirtz,*

59 Ill. 313; *Easter* v. *Minard*, 26 Ill. 495; *Depuy* v. *Schuyler*, 45 Ill. 306. Aside from the question of fraud Potter's appointment as supervisor was invalid, because Schultz was still in office when it was made, and it appears affirmatively that he was not present when the appointment was made, and took no part in it. *Crocker* v. *Crane*, 21 Wend. 211, 218; *S. C.* 34 Am. Dec. 228; *Babcock* v. *Lamb*, 1 Cowen, 238; *Ex parte Rogers*, 7 Cowen, 526, and note; *Louk* v. *Woods*, 15 Ill. 256, 262; *Williams* v. *Lunenburg School District*, 21 Pick. 75; *S. C.* 32 Am. Dec. 243; *McCoy* v. *Curtice*, 9 Wend. 17; *S. C.* 24 Am. Dec. 113. See *Anthony* v. *Jasper*, 101 U. S. 693.

II. These bonds were issued in violation of § 12, Art. XI., of the Constitution of Illinois of 1870, which prohibits municipal corporations from creating indebtedness to exceed five per cent. on the assessed value of the taxable property therein. When they were issued, the town was already indebted beyond that amount. There was no prior vote of the people, within the saving clause, and the adoption of the constitution deprived the town of the power to issue them. *Buchanan* v. *Litchfield*, 102 U. S. 278; *School District* v. *Stone*, 106 U. S. 183; *Litchfield* v. *Ballou*, 114 U. S. 190; *Prince* v. *Quincy*, 105 Ill. 138. The question whether power exists in a municipality to issue bonds may depend on extrinsic facts, not appearing on the face of the law. The purchaser is bound to know whether the power exists; *Northern Bank* v. *Porter Township*, 110 U. S. 608; *Dixon County* v. *Field*, 111 U. S. 83; *Merchants' Bank* v. *Bergen County*, 115 U. S. 384; *Daviess County* v. *Dickinson*, 117 U. S. 657: but is protected against mere irregularity in the execution of the power. See also *Anthony* v. *Jasper County*, cited above; *People* v. *Dutcher*, 56 Ill. 144; *People* v. *Glann*, 70 Ill. 232; *People* v. *Holden*, 91 Ill. 446. For the construction of this clause of the State Constitution by the Supreme Court of the State, see *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 562; *People* v. *Jackson County*, 92 Ill. 441; *Prairie* v. *Lloyd*, 97 Ill. 179; *Wade* v. *La Moille*, 112 Ill. 79.

III. The alleged vote of the people was not taken at an election as required by the statute. *Chicago & Iowa Railroad* v. *Mallory*, 101 Ill. 583; *Lippincott* v. *Pana*, 92 Ill. 24.

IV. The town is not estopped by the recitals in the bonds from making the defences now interposed. Assuming for the present purpose that the recital is sufficient to show that the bonds were issued in accordance with the provisions of the act therein mentioned, this would fall far short of showing that the same were issued in compliance with a vote of the people of the town at an election held in pursuance of that act prior to the adoption of the constitution in 1870. The act required an election to be held before the bonds were issued, but did not require the same to be held before the adoption of the constitution in 1870. This requirement was imposed by the constitution itself. The recital does not purport to show compliance with the vote of the people nor with the constitutional requirement in any respect, and cannot be so enlarged by construction as to embrace the same. *Buchanan* v. *Litchfield, School District* v. *Stone, Northern Bank* v. *Porter Township, Dixon County* v. *Field,* all cited above ; *Bates* v. *Ind. School District of Lyon County,* 25 Fed. Rep. 192 ; *Liebman* v. *San Francisco,* 24 Fed. Rep. 705.

V. The town is not estopped by the certificates connected with the registration of the bonds from showing the truth in its defence. *Dixon County* v. *Field* and *Daviess County* v. *Dickinson,* cited above. It cannot be held that it is estopped by the secret and fraudulent act of one who, at the time, had no color of title to the office of supervisor. *Anthony* v. *Jasper County* and *Merchants' Bank* v. *Bergen County,* both cited above.

VI. No estoppel arises from the recitals contained in the caption to the registration of the bonds in the supervisor's book. Rev. Stat. Ill., c. 113, par. 12.

VII. The town is not estopped by the recovery in the former suit, brought by Wallace upon other coupons, from making the defence set up in the special pleas in this suit. The Wallace suit was brought on other coupons than those involved in this suit. The defences interposed by the special pleas were not set up and actually litigated in the Wallace suit. Such being the case, the verdict and judgment in that suit do not estop the town from making either of the de-

fences set up in the special pleas in this suit. *Cromwell* v. *County of Sac,* 94 U. S. 351; *Davis* v. *Brown,* 94 U. S. 423; *Russell* v. *Place,* 94 U. S. 606; *Nat. Bank* v. *School District of Riverside,* 25 Fed. Rep. 629; *Nesbit* v. *Ind. School Dist.,* 25 Fed. Rep. 635. The statutory defence set up in the second plea could not have been proven as against a *bona fide* holder for value under the general issue, which was the only plea filed in the Wallace suit. *Anderson* v. *Jacobson,* 66 Ill. 522; *Cole* v. *Joliet Opera House Co.,* 79 Ill. 96; *Sims* v. *Klein,* Breese, 292, 302. While it was competent at common law, and independently of the statute, to prove fraud in the inception of the paper under that plea, it was sufficient answer to such proof, introduced under the general issue at common law, to show that the plaintiff was a *bona fide* holder for value. *Smith* v. *Sac County,* 11 Wall. 139. Under the pleadings in that case, it was unnecessary that the jury should pass upon the question of fraud in order to find a verdict for the plaintiff, who appeared to be a *bona fide* holder. Under the Illinois statute, when the defence that the making and executing of the paper was obtained by fraud, etc., is specially pleaded, the defence is good against a *bona fide* holder. *Hubbard* v. *Rankin,* and other cases cited *ante.* It is not competent to show by extrinsic evidence that matters were adjudicated in such former suit, *not* embraced within the issues as formed on the record. *Packet Co.* v. *Sickles,* 5 Wall. 580; *Putnam* v. *New Albany,* 4 Bissell, 365, 383; *Providence* v. *Adams,* 11 R. I. 190; *Russell* v. *Place,* 94 U. S. 606.

As to the Third Plea: The evidence shows that the defence set up in this plea, arising under § 12, Art. IX. of the Constitution, was not in any manner litigated in the Wallace suit. No evidence was introduced in that case tending to show either the amount of the existing indebtedness of the town or the assessed value of the taxable property therein. The defence appears to have rested on other grounds. *Davis* v. *Brown,* 94 U. S. 423, 428; *Barger* v. *Hobbs,* 67 Ill. 598; *Sturtevant* v. *Randall,* 53 Maine, 149; *Cromwell* v. *County of Sac,* *Russell* v. *Place,* above cited.

*Mr. Samuel W. Packard* for defendant in error.

MR. JUSTICE BLATCHFORD, after stating the facts as above reported, delivered the opinion of the court.

The court refused to submit to the jury, and we think properly, any question as to whether the making or execution of the bonds and coupons was obtained by fraud or circumvention.

Even if the statute applies to town bonds and their coupons, no fraud or imposition was practised on Potter or Marsh to induce them to sign these bonds and coupons. They knew what they were signing and signed intentionally. The fraud or circumvention intended by the statute, which only embodies a rule of the common law, is not that which goes merely to the consideration of the instrument, but it must go to the execution or making; and there must be a trick or device by which one kind of instrument is signed in the belief that it is of another kind, or the amount or nature or terms of the instrument must be misrepresented to the signer. No different ruling as to the statute has ever been made by the Supreme Court of Illinois, especially in a case where, as here, the holder of the instrument is a *bona fide* holder of it, before maturity, for a valuable consideration, without notice. In *Latham* v. *Smith*, 45 Ill. 25, decided in 1867, in construing this statute, the court said: " A fraud in obtaining a note may consist of any artifice practised upon a person to induce him to execute it, when he did not intend to do such an act. Circumvention seems to be nearly, if not quite, synonymous with fraud. It is any fraud whereby a person is induced by deceit to make a deed or other instrument. It must be borne in mind that the fraud or covin must relate to the obtaining of the instrument itself, and not to the consideration upon which it is based. It is not fraud which relates to the quality, quantity, value, or character of the consideration that moves the contract, but it is such a trick or device as induces the giving of one character of instrument under the belief that it is another of a different character; such as giving a note or

other agreement for one sum or thing when it is for another sum or thing; or as giving a note under the belief that it is a receipt." This ruling was followed in *Shipley* v. *Carroll*, 45 Ill. 285; *Elliott* v. *Levings*, 54 Ill. 213; and *Maxcy* v. *Williamson County*, 72 Ill. 207.

It is also contended that the appointment of Potter as supervisor was invalid, because Schultz, though he had resigned as justice, legally continued in office till his successor was elected, and yet took no part in the appointment. But it is plain, we think, that, within the language and meaning of the statute, as respects the four members of the appointing board designated by statute, two of them were out of office so far as their acting as such members was concerned. The supervisor and Schultz had resigned, and their offices were vacant, and it was lawful for the remaining two officers to fill the vacancy in the office of supervisor. No authority to which we are referred holds to the contrary. Where a town is trying to escape the enforcement of its liability to creditors through the resignation of an officer on whom process is to be served, and the failure to supply his place, the resigning officer is rightly held, *quoad* creditors, to continue in office, subject to the service of process, till his successor qualifies. In the present case there was not only a "vacancy" in the office of supervisor, for the purpose of filling it, under § 1, but there was a vacancy in the office which Schultz had held, for the purpose of the action of Cartwright and Marsh alone, as the remaining officers of the appointing board, to appoint a supervisor, under § 2. On any other construction, as, by § 2, a vacancy in the office of justice can be filled only by election, a town would, in case of a vacancy in the office of justice, have to go without a supervisor, in case of a vacancy in his office, till a justice could be elected.

Another defence is set up, under the amended third plea, founded on § 12 of Article 9 of the Constitution of Illinois, which went into effect August 8th, 1870, and provides as follows: "§ 12. No county, city, township, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose, to an amount,

including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for the State and county taxes previous to the incurring of such indebtedness. Any county, city, school district, or other municipal corporation, incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within, twenty years from the time of contracting the same. This section shall not be construed to prevent any county,' city, township, school district, or other municipal corporation from issuing their bonds in compliance with any vote of the people which may have been had prior to the adoption of this Constitution, in pursuance of any law providing therefor."

It appearing that, when the bonds in question in this suit were issued, the debt of the town was already greater than five per centum on the value of its taxable property, as ascertained by the assessment for 1870, it is contended that the bonds could not be lawfully issued, except in compliance with the vote of June 23d, 1870, and in conformity with the conditions imposed by that vote, one of which was the completion and equipment of the first division of the road on or before January 1st, 1871, and that that condition was not observed. The question is sought to be made one of power or authority to issue the bonds, within the rules laid down by this court as applicable even in the case of bonds in the hands of a *bona fide* holder.

At the time the bonds in question were issued, a statute enacted April 16th, 1869, was in force in Illinois, § 7 of which, Gross' Stat., 1869, vol. 1, 3d ed., p. 556, provided that any town should have the right, "upon making any subscription or donation to any railroad company, to prescribe the conditions upon which such bonds, subscriptions, or donations shall be made, and such bonds, subscriptions, or donations shall not be valid and binding until such conditions precedent shall have been complied with."

The language of this statute was as imperative as is that of

the Constitution of 1870 in regard to complying with the conditions contained in any vote of the people; and § 6 of the Act of March 30th, 1869, before cited, prescribes that the proper corporate authorities of the town shall make the donation or subscription, " as shall be determined at said election."

In respect to this compliance with the conditions imposed by the vote of the people, whether the question is to be regarded as arising under the provision of the Constitution or that of a statute, it must equally be regarded as concluded by the recital in the bonds, made by the supervisor and the town clerk. Section 6 of the Act of March 30th, 1869, provides that if a majority of the legal voters of the town, voting at the election, vote for the donation, the town shall, by its " corporate authorities," make the donation to the company, " as shall be determined at said election," and shall issue its bonds to the company, " which bonds shall be signed by the supervisor and countersigned by the clerk in towns organized under the township law." Within the numerous decisions by this court on the subject, the supervisor and the town clerk, they being named in the statute as the officers to sign the bonds, and the " corporate authorities " to act for the town in issuing them to the company, were the persons entrusted with the duty of deciding, before issuing the bonds, whether the conditions determined at the election existed. If they have certified to that effect in the bonds, the town is estopped from asserting, as against a *bona fide* holder, that the conditions prescribed by the popular vote were not complied with. They state, in each bond, that the faith, credit, and property of the town are, by the bond, solemnly pledged for the payment of the principal and interest named in it " under authority of " the Act of March 30th, 1869, reciting its title, and that the 60 bonds, amounting to $50,000, " are the only bonds issued by said town of Oregon under and by virtue of said Act." The provision in § 6 of the Act, that the town shall, by its proper corporate authority, annually assess and levy a tax to pay the interest and principal of the bonds, is a warrant for the pledge made, in the bonds, of the faith, credit, and property of the town. The recitals are within the ad-

judged cases in this court, as to the effect of recitals in bonds, that they are issued "under authority of" a specified statute, and "under and by virtue of" that statute, and they estop the town from taking the defence that the first division of the road was not completed by the time specified, as against the plaintiff, as a *bona fide* holder of the bonds.

In *Pana* v. *Bowler*, 107 U. S. 529, 539, this court upheld the effectiveness of a recital in bonds, in favor of a *bona fide* holder, as against an alleged defect in the mode of conducting an election, held prior to the adoption of this same Constitution of Illinois, the bonds being issued after its adoption, although that instrument forbade the issuing of the bonds, unless their issue should have been authorized under then existing, laws, by a vote of the people prior to the adoption of the Constitution.

The present case is directly within the decision of this court in *Ins. Co.* v. *Bruce*, 105 U. S. 328, where it was held that recitals in bonds estopped a town in Illinois, as against a *bona fide* holder, from showing that conditions imposed on its liability by the vote of the people had not been complied with, although the statute declared that the bonds should not be valid and binding until such conditions precedent had been complied with. There are numerous other cases in this court to the same effect.

The provision of § 12 of Article 9 of the Constitution of Illinois did not introduce any new rule of evidence in regard to the mode of proving, in favor of a *bona fide* holder, the compliance with the vote of the people, but left the compliance to be conclusively established in such a case by the recital in the bonds, made by the designated official authorities.

We are not referred to any decision of the Supreme Court of Illinois, made prior to the issuing of the bonds in question, which holds to the contrary of the views we have announced. The case of *The People* v. *Dutcher*, 56 Ill. 144, decided at September Term, 1870, was a mandamus applied for by a railroad company to compel a supervisor to subscribe for stock, where conditions imposed by the vote of the town had not been complied with, and its bonds had not been issued. The

mandamus was refused. This direct proceeding is, as this court has uniformly held, a very different thing from a suit on the bonds, by a *bona fide* holder, the cases not being analogous or governed by the same rules.

A defence is also set up, under the amended fourth plea, founded on the second additional section or article to the Constitution of Illinois, of 1870, which took effect July 2, 1870, and is in these words : "No county, city, town, township, or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation : *Provided, however,* That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption."

The bonds in question having been issued after July 2, 1870, and the requirement, to make them valid, being that they must have been authorized, under laws in force before July 2, 1870, by a vote of the people of the town given before that date, it is contended that they were not so authorized, because the vote of June 23, 1870, was taken at a town meeting held and presided over by a moderator, and not by judges of election. The argument made is, that § 6 of the Act of March 30th, 1869, provided that the election should "be held and conducted and return thereof made as is provided by law, and, in any village or city, as is provided by the law under which the same is incorporated ;" and that a town meeting, presided over by a moderator, and not held by the supervisor, assessor, and collector, as judges of election, was not an "election," within the meaning of the statute, and so was not an election "under existing laws," within the meaning of the Constitution.

The election was in fact conducted in the manner required for the election of town officers, and not in the manner required for general elections. We are of opinion that, under the Act of 1869, the election in a town could properly be conducted in the manner prescribed by law for the election in towns of town officers, namely, by a moderator and the town

clerk, the town clerk having given, as required by the Act, the prior notice of the election, and the return of the election being filed in the office of the town clerk; and the two officers being paid by the town. The voting for town officers at annual town meetings in the manner prescribed therefor by the statutes of Illinois, is called in those statutes an " election," and this special voting in the same manner for this town object was an " election," within the meaning of the Act of 1869. The requirement of the Act is, that the " election shall be held and conducted and return thereof made as is provided by law," and not " as is provided by law for general elections." If a town, it is the law provided for town elections. If a village or city, and the law of its incorporation has special provisions, those are to be followed ; otherwise, any general law as to village or city elections is to be observed. As the proceeding was to originate by an application filed in the town clerk's office, so the same officers who would conduct an ordinary town election were to be concerned with this election, and the town clerk's office was to be the place of deposit of all the papers and of the return of the vote, and two town officers were to issue the bonds. None of the proceedings were to be connected with the county clerk's office, as in the case of a general election. This was the ruling of the Supreme Court of Illinois, in a case decided after June 23, 1870, though before these bonds were issued, *The People v. Dutcher*, 56 Ill. 144 ; and it was followed in other cases, in that court, after the bonds were issued, though somewhat modified more recently. We think it was the correct ruling.

The questions above considered cover substantially all the assignments of error. The direction to find a verdict for the plaintiff was proper.

*Judgment affirmed.*