THE PEOPLE *ex rel.* GERALD COMPTON, Plaintiff-Appellant, *v.* J. C. PENN, Defendant-Appellee.

(No. 75-131;

Fifth District—October 16, 1975.

Gary R. Dillinger, Assistant State's Attorney, of Murphysboro, for appellant.

William Kent Brandon, of Carbondale, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This appeal arises from a quo warranto proceeding brought against J. C. Penn, in which the plaintiff-appellant sought the ouster of Penn from the Board of Town Auditors of Carbondale Township. The parties made a stipulation of facts as set out hereinafter.

Plaintiff, Gerald Compton, is a resident of the city and township of Carbondale, Illinois, and is a duly elected member of the Board of Town Auditors of that township. Defendant, J. C. Penn, is also a resident of the city and township of Carbondale, Illinois, and is a qualified and registered voter thereof. The Board of Town Auditors of Carbondale Township consists of a township supervisor and four members elected at large, all of whom are voting members. (Ill. Rev. Stat., ch. 139, § 117.) Prior to June 6, 1974, a vacancy on the Board of Town Auditors of such township existed because of the resignation of one of the duly elected members. On June 6, 1974, a duly called meeting of the Board of Auditors was held. At-

tending the meeting were W. I. Brandon, Township Supervisor, and Anne Rosenthal, member of the Board of Auditors. Not attending the meeting were Gerald Compton and Clara McClure, members of the Board of Auditors. The two members in attendance voted, two votes to none, in favor of appointing J. C. Penn to fill the vacancy on the Board of Auditors.

The parties involved in the instant action have agreed that the issues involved herein are: (1) whether it was necessary for three of the four remaining members of the Board of Auditors to be present at the meeting in order to have a legal quorum and to be able to fill the vacancy and (2) whether it was necessary to have a majority vote of the remaining members of the Board of Auditors to fill the vacancy. Stated very simply, this case involves a determination of what is necessary for the lawful appointment of a Board of Town Auditors to fill a vacancy on such Board.

Section 1 of article X of "An Act to revise the law in relation to township organization" (Ill. Rev. Stat., ch. 139, § 96) provides:

> "Whenever any town fails to elect the proper number of town officers to which such town is entitled by law, or when any person elected to any town office fails to qualify, or whenever any vacancy occurs in any town, from death, resignation, removal from the town, or other cause, the board of auditors of the township shall fill the vacancy by appointment, by warrant under their hands and seals * * *."

Section 2 of article X (Ill. Rev. Stat., ch. 139, § 97) provides:

> "Whenever a vacancy occurs, from any cause, in the board of auditors of any township, the remaining members of the board of auditors shall fill any vacancies thus occurring by appointment as provided in Section 1 of this Article."

"Section 1 of this Article" is section 1 of article X (Ill. Rev. Stat., ch. 139, § 96), set out above.

It is readily apparent from reading these two sections of chapter 139 that the legislature did not specify the number of remaining Board members which must agree in order to fill a vacancy. The sections simply refer to "the board of auditors" and "the remaining members of the board of auditors" respectively. Are these sections then to be construed as requiring unanimous action by the remaining members of the Board of Auditors when a vacancy on such Board occurs, or do they require only action by a majority of all them or only action by a majority of those who participate in the undertaking?

As far as we can determine the instant case involves a matter of first impression in this State. Both parties involved refer to *Town of Oregon v. Jennings* (1886), 119 U.S. 74, 30 L.Ed. 323, 7 S.Ct. 124. However, we

do not feel that case determines the matter involved here, even though in that case the Supreme Court of the United States dealt with an earlier enactment of the same statutory sections with which we are presently concerned. In *Oregon v. Jennings*, the town had, by Illinois law, a Board of Auditors consisting of one supervisor, two justices of the peace, and one town clerk. The statute provided that a vacancy in the office of the supervisor or of town clerk could be filled by appointment by the remaining town officers but that a vacancy in the office of justice of the peace could be filled only by election. It occurred that there was a vacancy in the office of supervisor and in one of the offices of justice of the peace. The remaining justice of the peace and the town clerk then appointed a man to the supervisor position, and the validity of this appointment was put in issue. The United States Supreme Court held the action of the remaining two officers valid under the Illinois statute.

> "The supervisor and Schultz had resigned, and their offices were vacant, and it was lawful for the remaining two officers to fill the vacancy in the office of supervisor. No authority to which we are referred holds to the contrary. * * * In the present case there was not only a 'vacancy' in the office of supervisor, for the purpose of filling it, under Section 1, but there was a vacancy in the office which Schultz had held, for the purpose of the action of Cartwright and Marsh alone, as the remaining officers of the appointing board, to appoint a supervisor, under Section 2." (119 U.S. 74, 90.)

If *Oregon v. Jennings* be authority at all for the instant case, it would only be for the proposition that it would have been lawful for all four of the remaining members of the Board of Auditors of Carbondale Township together to have appointed a person to fill the vacancy. It would not be authority for the proposition made by defendant-appellee that any two members of the remaining four members could lawfully fill the vacancy.

Both parties involved in the instant case point to sections 5 and 7 of article XIII of "An Act to revise the law in relation to township organization" (Ill. Rev. Stat., ch. 139, §§ 121, 123) and the use of the word "majority" therein. Plaintiff-appellant submits that those two sections having appeared in the same act as the sections involved herein, indicate an intention that majority action be required for *any* activity by the Board of Auditors. Defendant-appellee, on the other hand, asserts that, had the legislature intended to require majority action under sections 1 and 2 of article X (Ill. Rev. Stat., ch. 139, §§ 96, 97), it would have specifically used the word "majority" in sections 1 and 2 of article X as it did in sections 5 and 7 of article XIII.

■■ We are not persuaded that use of the word "majority" in the other sections of chapter 139 should be construed as controlling the matter

involved here. In our opinion, the best approach to the instant problem has been stated in *State ex rel. Saxon v. Kienzle* (1965), 4 Ohio St. 2d 47, 48, 212 N.E.2d 604, 605:

"In the absence of a statute to the contrary, any action by a board requires that a quorum participate therein, and that a majority of the quorum concur. *Merchant v. North,* 10 Ohio St. 251. See *State, ex rel. Cline, v. Trustees of Wilkesville Township,* 20 Ohio St. 288."

Also see State *ex rel. Hill v. Ponder* (1942), 221 N.C. 58, 19 S.E.2d 5, 8, for substantially the same statement.

*Merchant v. North* (1859), 10 Ohio St. 251, the primary authority for the statement made by the Ohio Supreme Court in *Kienzle* above, provides an excellent discussion of the considerations involved in a situation such as that of the instant case. *Merchant,* although not involving the filling of vacancies on a board, involved, in substance, the problem of the legislature having given a designated group the power to take a particular action, without having specified the number of the group required to participate for proper exercise of the power.

According to section 7 of the Act of March 29, 1856, the "judges" of the court of common pleas of each judicial district of Ohio were given the power to set a special term of court. Section 2 of the same Act provided that the "judges or a majority of them" could set the general term of the court. There were five judges of the court of common pleas for the fourth judicial district of Ohio in 1857. On December 29, 1857, after due notice to all five judges, a meeting was held to discuss the setting of a special term. Only three of the five judges attended. All of the three judges in attendance agreed upon and fixed a special term of the court. Thereafter the *Merchant* case arose and involved the question whether the action of the three judges in setting the term was lawful. The Supreme Court of Ohio discussed the problem as follows:

"It is true that section 7 does not, like section 2, authorize a mere majority of the judges to appoint such special term of the district court. The character of the authority conferred by section 7, may have been regarded such, as to have induced the legislature to commit the trust only to all the judges instead of to a mere majority. The holding of a special term is, by the provisions of the section, made to depend upon the opinion of the judges as to the want of time, at a regular term, to dispose of the business, or whether, from other circumstances, there exists good cause for appointing such special term. The exercise of this authority and public trust the legislature have seen fit to devolve upon all the judges instead of a majority. The judges ought, therefore, accord-

ing to well established principles of law, recognized in analogous cases, to have all been present, or at least *constructively* so. They should have all been duly notified of the time and place of the meeting at which the appointment of such special term was to have been determined upon; and then the action of a majority would have been legal. And if the record in this case showed us that the two judges, whose names do not appear to have been signed to the order, were neither present nor notified, we could not regard the appointment of the special term, as a legal term of the court." ( 10 Ohio St. 251, 257.)

The court went on to hold that, since all of the five judges had been notified, the action, having been taken by a majority of them, was legal.

The Ohio Supreme Court in *Merchant* did not discuss what the outcome of the case would have been had only two of the three judges attending the duly called meeting agreed upon the setting of the term. However, it is apparent from the statement set out above from *Kienzle* that two of the three judges could lawfully have set the term, all of the five judges having been notified of the meeting and three being in attendance. Also see *Hill v. Ponder.*

■■ This reasoning is in accord with the long-established common law quorum rule.

"The general rule, also, is, that to make a quorum of a select and definite body of men possessing the power to elect, a majority at least must be present; and then a majority of the quorum may decide." *Ex parte Willcocks* (N.Y. 1827), 7 Cow. 402, 17 Am. Dec. 525.

"It is a fundamental rule of parliamentary procedure, applicable as well to municipal and electing boards, that a majority of the members of a body consisting of a definite number constitutes a quorum for the transaction of business (Art. I sec. 5, Cons. U.S., Jefferson's Manual, sec. 402)[1], and it is equally well settled that a majority of the quorum has power to act. [Citation.] This rule derives from the common law and is of universal application unless modified by statute or some controlling regulation or by-law in the particular instance. [Citations.] 'The voice of the majority decides; for the *lex majoris partis* is the law of all councils, elections, etc., where not otherwise expressly provided.' Jefferson's Manual, sec. 501." *Hill v. Ponder* (1942), 221 N.C. 58, 62, 19 S.E.2d 5, 8.

In the instant case it is undisputed that the meeting of June 6, 1974, at which defendant, J. C. Penn, was appointed was a duly called meet-

[1] Also see Ill. Const. (1970), art. IV, § 6(a).

ing. It therefore would have been lawful for a majority, or a common law quorum, of the remaining members of the Board of Auditors to have acted to fill the vacancy on the Board by appointment. There being four remaining members of the Board, three were required for a quorum. If a quorum had been present, a majority of those present could have acted to make the appointment. However, since only two of the remaining four members were present, the action taken in appointing J. C. Penn was invalid.

The order of the trial court in denying the relief requested by plaintiff was, therefore, error and is hereby reversed.

Reversed.

KARNS and CARTER, JJ., concur.