Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 ■ The defence is placed, by the learned counsel for the de fendant, in his brief, upon two grounds:
 

 
 *183
 
 1. That the county is not liable, .on the bonds or coupons, for the reason there was no power in the county to subscribe for the stock, to the railroad company, or to issue the bonds; that they are void, as against the constitution and laws of the State.
 

 2.. That prior to the date of the bonds and coupons, certain suits were instituted, in the. District Court of Lee County, impeaching the validity of the bonds, if.issued, and charging that th,ey wopld constitute no indebtedness against the county, and claiming that the county judge, who was the fiscal agent of the county, should be enjoined from issuing the bonds;, that an injunction was granted, and that the bonds were
 
 issued,,lite pendente,
 
 and put on the market, with full notice of the pendency of the suit; that this suit was continuously'and successfully/prosecuted, and the courts of. the State had- adjudged the bonds to be null and void, and ■ the collection of the same perpetually enjoined.
 

 ' I. As to’the power or authority of the county.to subscribe for railroad, stóck, and to issue-bonds therefor.
 

 Much the largest portion of the brief of the counsel is devoted'to a.-, very able discussidn'of this'question. But, after the decision of this court in the ease of
 
 Gelpcke
 
 v.
 
 The City of
 
 Dubuque,
 
 *
 
 and the series bf cases following it, we must decline a re-examinati'on of the question. We regret the difference of opinion on the subject of these bonds, between this court and the <?ourts of the State of Iowa; but it involves a principle and rule of property,' in ofir opinion, so just, and so essential to the protection of the rights of the
 
 bona fide
 
 nolder of this class of securities, that, however much we may respect the judgment of those differing from us, we cannot give up our own. Tjhat difference, as we understand it, consists in this:' This court held, in
 
 Gelpcke
 
 v.
 
 The City of
 
 Dubuque, that bonds, issued by counties, cities, or towns,- in Iowa, to railroad companies, for stock in' said - companies, -and which said bodies, at the time the bonds were issued, were held, by' the settled adjudications of the
 
 *184
 
 highest courts of the State, to possess full power, under its constitution and laws, to issue the same, are ever after valid and binding upon the body issuing them, in the hapds of. a
 
 bond fide
 
 holder. Since these bonds were issued, and in the hands of
 
 bond fide
 
 holders for value, the courts of Iowa have reversed their previous decisions, and now hold that these bodies possess no such power under the constitution and laws of the State, and hence they are void, even in the hands of the
 
 bond fide
 
 holder. The learned and elaborate argument of the counsel for the plaintiff’ in erroi,-in this case, is devoted .to the support-of these more recent decisions, and the earnestness and care with which he has discussed the question, Which series of cases shall prevail? leave no doubt of the sincerity of his conviction. But, for the reasons stated, we must respectfully decline following him.
 

 II. The second ground of defence involves the question of notice to the plaintiff’ below, or, in other words, the effect of the
 
 lis pendens,
 
 as claimed by the counsel. In order to examine this branch of the defence, understandingly, it will be necessary to recur, for a few moments, to the facts as they appear in the answer.
 

 The first' suit, by
 
 McMillen and others
 
 v.
 
 Boyles County Judge,
 
 was. commenced. by petition or bill-, October, 1856, and terminated in a decree to enjoin the defendant, December Term thereafter.
 

 The opinion of the Supreme Court, in this casej is in the record.
 
 *
 
 The court held, the election, by the-voters in the county, under the direction of the county judge, to have been irregular in several particulars, as not being in conformity to the act providing for a’submission of the question of subscribing for the- stock and issuing the bonds. At this time it does not appear that any stock had been subscribed for or bonds issued. The -question was presented, in tiffs case, ahd pressed by counsel for the petitioner, whether or pot the county possessed competent power to issue the bonds under the constitution and laws of the State?
 

 
 *185
 
 'Judge Stockton, who delivered the opinion!, as it respects this'question, observed, “We do not deem it expedient or necessary, at the present time, to enter into an examination of the other questions presented and discussed by counsel'. Their inherent importance, and the great interest felt in-their decision by a large portion of the people of-the State, admonish us of the. patient Study and deliberation with which their investigation must-be attended! ' Another reason, he observes, which has had its weight with us, is, it is understood that the questions raised have been pressed upon, and decided by, tfye former members of this court, in the case .of the
 
 County of Dubuque
 
 v.
 
 The Dubuque and Pacific Railroad
 
 Company.-
 

 Soon after this decision, the legislature being ,in session, an act was passed to cure the defects in the proceedings béfore the county judge, in the submission of the question to the voters, which became-a law oruthe 29th January, 1857. This act is very comprehensive. - After confirming the proceedings in the first section,..it declares that “the subscriptions made by said -county, &c., and the /bonds of said counties, &c., issued in' pursuance of said votes and subscription, or hereafter to be issued, are hereby declared' to be legal and valid; and that all'such bonds issued, and hereafter to‘be issued, in pursuance of such votes and-subscriptions, Shall be a valid lien upon the taxable property-of said county, &e.”
 

 The'second section is equally emphatic. It provides, that “ the-county Judge, &c., or other proper authorities of said county, &c., shall levy and collect á tax to meet the payment of the principal and interest of such bonds; and the counties, &c., shall not be allowed to plead in any suit brought to recover the principal or interest of such bonds, that the same ■ are usurious, irregular, or invalid, in conséquence of the in-formalities, cured, by this act,”
 

 The-third section re-affirms the validity of all bonds theretofore issued by the county,, and the subscriptions to the railroads, notwithstanding any informalities or irregularities jn the submission of the question to the vote of the péople. •
 

 
 *186
 
 A second suit was brought by petition or bill, by McMillen and others, against'the judge of the county, on the 26th February, 1858, to' enjoin him from levying a tax, and to have the confirmatory law declared to be unconstitutional, and the bonds void. This suit was commenced more than a year after the passage of the act; and such, proceedings were had therein, that the District Court of the County of Lee dismissed it; and, on .appeal, this decree was affirmed on the 22d 'June, 1858. The opinion of the court is in the record.
 
 *
 
 It was delivered by Chief Justice Wright. He observes, “ The power of a county to take stock in a 'Company organized for the purpose of constructing a railroad, or other public improvement, through-the same, has been recognized by a majority of this court in the following •cases.” He then refers to'
 
 Dubuque
 
 v.
 
 Dubuque and Pacific Railroad
 
 Company,
 
 †
 

 Leech
 
 v.
 
 Bissel, County Judge of Cedar
 
 County, and
 
 Clapp
 
 v.
 
 Cedar County,
 

 ‡
 

 and
 
 Ring
 
 v.
 
 Johnson,
 
 decided at the present term.
 
 §
 
 He adds, “ While I have never concurred in this ruling, and .still deny the power, yet it may now, as I suppose, be regarded as settled.” He then examines the question whether the legislature had power to pass the act of 29th January, 1857; and whether it had the effect of legalizing the vote taken in Lee County, and comes tov the conclusion that the legislature was perfectly competent to .legalize and make valid the proceedings before the county judge.
 

 This decision of the highest court of the State upon the power of the county to issue the bonds, of which those in question are a part, and also.upon the power of the legislature to confirm the irregularities committe<l in the preliminary steps to their issue, would seem to have put an end to any controversy concerning them. They have the sanction of both the legislative and judicial departments of the State. Higher authority could not be invoked in their favor. If the holders or purchasers cannot confide in these sanctions in
 
 *187
 
 parting with1
 
 their'
 
 money, they may Well deépair of ahy safety or security in their dealings pr them.
 

 NoW,\what is the answer to all .this authority?
 

 On thé 28th July, 1860, two yeárs after this- judgment affirming the validity of the bonds, a petition or bill of review was filed in .á district court for the purpose' of obtaining.a re-examination of the judgment; and such proceedings were had, that on the l’8th October, 1862, the Supreme Goprt adjudged that the bonds and coupons, together with the vote of' the county of Lee, by which it' is clain/ed they were authorized, and the subscription to the-stock of the railroad companies, and all other acts and things dope' in and about the premises by the county judge and his predecessors in office,, and the levy of taxes, &c., are all’ unauthorized by, law and utterly void; and that the act of the legislature curing or attempting to cure the irregularities in the- vote of the county are also held to be null and-void. -This .caáe is reported in 3.4 Iowa, p, 107. It is due to the learned counsel for the plaintiff in error, to say? that he does nót put, this, branch of the defence on ’.the ground that the last decision in the case should prevail over' the prior one holding the bonds to be valid, after the legislative sanction,; but puts it on- this ground in his own w;ords,'namely: “That the court erred in’ sustaining the demurrer to the answer aud amended answer, of defendant,' in so far as they set up the pendency of a suit to cancel said bonds at the time of -, their issue, and'át the time of plaintiff’s purchase, and Which suit being continuously prosecuted resulted in a decree declaring invalid the bonds.” -’
 

 Now, there are two answers to thi^ ground of defence:, First, the suit brought to enjoin the issuing of the bonds for irregularities in the- vote of the county, and the judgment enjoining the judge was disposed of by the copfirmatory act ' of the legislature. By that act the irregularities were cured, and the bonds already issued or thereafter to be issued were declared valid. After this act notice was an element of no importance. The suit was at an end. The whole foundation on which it rested was removed. This was so regarded
 
 *188
 
 by the plaintiffs, for two years afterwards they brought a second suit to have the bonds declared void for want of power in the coupty to iásue them; and also the act of the legislature for the want of power to confirm the irregularities in the vote. The decision in that case, however, as we have seen, was adverse to both these propositions.'
 

 In the second place, there was no pending litigation from ■the commencement of the first suit to .he termination of the last, namely, from the 15th of October, 1856, to the 18th of October, 1862.
 

 There were three distinct and independent suits, with an interval of one year between the first and second, and of two years between the second and third. The doctrine of
 
 lia
 
 ;pendens, therefore, has no application to the case.
 

 Judgment aeIirmbd.
 

 Mr. Justice MILLER did not sit in this case.
 

 *
 

 1 Wallace, 176-223.
 

 *
 

 Reported in 3 Iowa, 311.
 

 *
 

 Reported in 6 Iowa, 391.
 

 †
 

 4 Green, 1
 

 ‡
 

 5 Iowa, 15.
 

 §
 

 6 Id. 265.