### HILL *v.* SCOTLAND COUNTY.

*(Circuit Court, E. D. Missouri, N. D. March 5, 1888.)*

1. COUNTIES—LIABILITIES AND INDEBTEDNESS—BONDS—BONA FIDE HOLDER.
    A purchaser of negotiable bonds of a county is not affected with constructive notice of the pendency of a suit to test the validity of such bonds.
2. SAME—PURCHASER OF BONA FIDE HOLDER.
    A purchaser from an innocent holder of negotiable bonds of a county, issued under proper authority in subscription for stock of a railroad corporation, can recover thereon against the county, even though he purchased them with notice of the pendency of a suit to test the validity of such bonds, in which they were adjudged void.

At Law.

*F. T. Hughes,* for plaintiff.

*H. A. Cunningham,* for defendant.

THAYER, J. This is a suit on 46 coupons clipped from 40 bonds of a series of 200 bonds of the denomination of $1,000 each, alleged to have been issued by Scotland county to the Missouri, Iowa & Nebraska Railroad Company in payment for stock of that corporation subscribed in 1870. By stipulation of counsel the case was submitted on the testimony contained in the printed transcript of the record of a case between the same parties, which was tried some years since by my predecessor, Judge TREAT, at St. Louis, Mo., and is now pending on appeal from his decision in the supreme court of the United States. The answer in this case, as I take it, admits that all the coupons sued upon and filed in this case bear the signature of the county clerk of Scotland county, and were detached from bonds which were signed by the presiding justice of the county court of Scotland county, and that his signature is duly attested by the signature of the county clerk and seal of the county court. There is a plea that the coupons declared upon are not the act or deed of Scotland county, but, taken as a whole, it is clear, I think, that the answer puts in issue, not the genuineness of signatures to the bonds, or the existence of instruments purporting to be bonds of Scotland county, such as are described in the petition, but the power of the various county officials to execute such securities, and thereby bind the county. The authority of the county court to issue the bonds in question, notwithstanding the consolidation of the Alexandria & Bloomfield Railroad with the Iowa Southern Railway, thereby forming the Missouri, Iowa & Nebraska Railroad, and notwithstanding the change of the route of the road, is settled, so far as this court is concerned, by the decision in *Scotland Co.* v. *Thomas,* 94 U. S. 682, where these questions are fully considered and determined.

The answer contains a further plea to the effect that the entire issue of bonds by Scotland county, including, of course, those from which the coupons in suit were detached, have been adjudged void by the supreme court of the state of Missouri, in the case of *Wagner* v. *Meety,* 69 Mo. 150, and that the plaintiff stands in privity with the defendants in that suit, and is bound by the decree therein, not being himself an innocent purchaser of the bonds, and not having derived title thereto by, through, or under an innocent purchaser thereof. This latter defense was mainly relied upon in the case tried before Judge TREAT, and is particularly invoked in the present suit. In the case of *Scotland Co.* v. *Hill,* 112 U. S. 185, 5 Sup. Ct. Rep. 93, also in the case of *Warren Co.* v. *Marcy,* 97 U. S. 96, it was held that purchasers of commercial paper like that now in suit were not chargeable with constructive notice of the pendency of litigation affecting the title or validity of such securities; that to bind a purchaser of such securities by a decree or judgment in a suit affecting the same to which he was not a party, it must appear that he bought

with actual notice of the pending litigation. Following that rule, Judge TREAT held in the former suit between these parties that to preclude plaintiff from recovering upon the coupons then in issue (inasmuch as the supreme court of the United States had decided that the county of Scotland had authority to issue the bonds from which the coupons were detached) it must be made to appear that every holder of the bonds, from the time they left Mety's hands, who, as an agent of the county, delivered them, down to and including the plaintiff, was affected with actual notice of the suit of Wagner against Mety. In other words, it was ruled that, if a single holder intermediate between Mety and the plaintiff bought the bonds in open market, for value, without notice of the suit, and prior to maturity, that such negotiation to an innocent purchaser created a good title, upon which plaintiff might recover, notwithstanding the decree in *Wagner* v. *Meety*, and notwithstanding any notice which the plaintiff may have had of that suit at the date of his purchase. The ruling of the court on that point is not seriously questioned in the present case. Indeed, it is a well-settled rule of commercial law that title to a negotiable instrument created by a sale of the same to an innocent person, for value, and before maturity, is a title upon which any subsequent transferee can recover, notwithstanding he may have notice of infirmities of title, or of equities or defenses that exist between the original parties. *Commissioners* v. *Clark Co.*, 94 U. S. 278; *Cromwell* v. *Sac Co.*, 96 U. S. 59; Story, Prom. Notes, § 191. It is insisted, however, that 23 of the bonds involved in the present case were not involved in the former suit; that the title thereto was not traced in the former suit; that no negotiation of the same to an innocent purchaser was proven; and that, when on the present trial the record in the suit of *Wagner* v. *Meety* was offered, the burden devolved upon the plaintiff to show that he was himself an innocent purchaser of the 23 bonds in question, or to show a title derived thereto from an innocent purchaser, which, as it is claimed, the testimony in the record wholly fails to establish. With reference to this contention I will say that as the plea relied upon is that of a former adjudication that the bonds were illegally issued, which adjudication is claimed to be binding on the plaintiff merely because he derives title to the bonds under persons who were parties to that suit, and with notice of its pendency, it is doubtful whether the production of that record imposed on plaintiff the burden of tracing the bonds, and showing that they had passed through the hands of an innocent purchaser. As plaintiff was not a party to the suit of *Wagner* v. *Meety*, and as the bonds involved were negotiable securities, it would seem rather that the decree in that case would not be evidence as against the plaintiff that the bonds were put in circulation fraudulently or illegally, so as to cast the burden of proof upon plaintiff, until the defendant had itself traced the history of the bonds, and given evidence at least tending to show that plaintiff and all preceding holders bought with notice of that suit, and so stood in privity with the defendants therein. Defendant seems to invoke the decree in that case as evidence of fraud

and illegality in the issue of the bonds before laying the necessary foundation to make the decree evidence as against those who were not parties to the suit.

But, be this as it may, assuming for the purpose of this decision that the burden is on the plaintiff to show that the 23 bonds alluded to that were not involved or traced in the former suit have passed through the hands of an innocent purchaser, the testimony, in my opinion, fairly shows such fact. The evidence contained in the printed record upon which this case was submitted, shows that the Missouri, Iowa & Nebraska Railroad Company transferred the entire issue of bonds for value and before maturity to the Iowa Railroad Contracting Company; that the latter company bought without notice of the suit of *Wagner* v. *Meety*, and without notice of any infirmity of title, and that it subsequently sold the whole issue in open market at about 80 cents on the dollar to various purchasers. Without any reference, therefore, to the question whether the testimony also shows that plaintiff bought with notice of the pending suit, or with notice that a part of the bonds had been put in circulation in violation of an injunction of the state court, it appears to me that the evidence establishes the fact without contradiction that before the bonds reached his (plaintiff's) hands, they had passed through the hands of an innocent purchaser, and that he is not precluded from recovering in this case by reason of any notice or information which he may have had at the date of his purchase. The result is, in my opinion, that judgment should be entered as prayed for by the plaintiff; and it is accordingly so ordered.