HUGHES COUNTY, S. D., v. LIVINGSTON.

'(Circuit Court of Appeals, Eighth Circuit. October 9, 1900.)

No. 1,337.

1. POWER TO ISSUE MUNICIPAL BONDS—ESTOPPEL FROM DENYING BY RECITALS.

A quasi municipality may not, by recitals in its bonds, estop itself from denying that it is without power to issue them, when the laws are such that there can be no state of facts or of conditions under which it would have the authority to emit them.

2. SAME.

But if the laws are such that there might, under any state of facts or circumstances, be legal power in the quasi municipality to issue its bonds, it may by recitals therein estop itself from denying that those facts or circumstances exist, and that it had lawful power to send the bonds forth, unless the constitution or the law under which the bonds are issued prescribes some public record as the test of the existence of some of those facts or circumstances.

3. SAME—ESTOPPEL BY RECITALS OF OFFICERS.

When a municipal body has authority to issue bonds on the condition that certain facts exist, or certain acts have been done, and the law intrusts the power to, and imposes the duty upon, its officers to ascertain, determine, and certify the existence of those facts, or the doing of those acts, at the time of the issuing of the bonds, their certificate will estop the municipality, as against a bona fide holder of the bonds, from proving its falsity to defeat them.

4. SAME—COUNTIES—CERTIFYING OFFICERS TO EXAMINE RECORD OF CANVASSING BOARD.

It is the duty of the board of county commissioners, which is required to certify that bonds are issued in pursuance of an act of the legislature, which prescribes the favorable vote of the electors of the county as a condition precedent to their issue, to examine the proper record, when it is not itself the canvassing board, and ascertain whether or not a legal proposition to issue the bonds has been sustained by the vote of the electors, and its certificate that the bonds have been issued in pursuance of the act precludes the county from defeating them in the hands of an innocent purchaser, either on the ground that no lawful proposition to issue them was submitted to the electors, or on the ground that such a proposition was not sustained by their vote.

5. SAME—RECITAL BY OFFICERS—EFFECT.

A recital of a compliance with the authorizing act by the officers of a county in a bond which they issue estops the municipal body from denying every fact connected with, or growing out of, the discharge of the ordinary duties of such officers, which under the law they were required to ascertain and determine before they issued the bonds.

6. SAME.

A recital by the officers of a county in a bond that it was issued in pursuance of an act of the legislature which authorized the county to fund its indebtedness of a certain class is a plain certificate that it was issued in place of a just and valid indebtedness of the county of the character which the authorizing act empowered the officers of the county to fund.

7. SAME—RECITAL OF ISSUE IN PURSUANCE OF LAW—EFFECT.

An authorized recital in municipal bonds that they are issued "in pursuance of" a legislative act which empowers the municipality to issue them on the conditions that a fundable debt exists, that the electors of the county have voted to issue them, that they have been duly advertised for sale and duly registered, imports that these and all other precedent conditions have been fulfilled when the bonds were sent forth, relieves the innocent purchaser of all inquiry, notice, and knowledge of the actual action and records of the officers of the municipality, and estops the municipal body from denying that such action was taken and such records

were made as authorized the issue of the bonds, unless the constitution or the act under which the bonds were issued prescribes some public record as the test of compliance with some of the conditions precedent. Laws Dak. T. 1889, c. 42.

8. SAME.

Such a recital in a bond issued by the board of county commissioners of a county is a certificate that the levy of the annual tax to pay the interest and principal of the debt evidenced by the bonds required by section 5, art. 13, Const. S. D., has been made.

9. SAME—FUNDING BONDS CREATE NO INDEBTEDNESS.

The issue of bonds to fund the debt of a municipality neither creates nor increases the debt, but simply changes its form.

10. SAME—ESTOPPEL FROM DENYING VALIDITY OF DEBT FUNDED.

The fact that the warrants in place of which funding bonds were issued were fraudulent, or that the apparent debt which they were issued to pay was fictitious, or that their proceeds were diverted from the lawful purpose specified in the bonds to illegal purposes, constitutes no defense against an action by an innocent purchaser upon municipal bonds which were issued under a statute authorizing the municipality to fund its indebtedness, and which lawfully recited that they were issued under that act and for that purpose.

11. PLEADING CONDITIONS PRECEDENT—NOT REQUIRED IF RECITED.

A complaint which sets out the bond, which contains a recital that it was issued in pursuance of a specified legislative act, and avers that the bond was issued in conformity with the enactment therein recited, and that the plaintiff is a bona fide purchaser thereof for value, is good, although it does not otherwise allege a compliance with the conditions precedent to its issue.

12. PRACTICE—REFUSAL TO DISMISS WAIVED BY INTRODUCING DEFENSE.

Any error in a refusal to grant a motion of a defendant to enter judgment in his favor or to dismiss an action at the close of the plaintiff's evidence is waived by subsequently introducing evidence and proceeding with the trial of the case on its merits.

13. GENERAL FINDING OF COURT CONCLUSIVE—ISSUES OF FACT.

Where a jury is waived, and there is testimony raising issues of fact, and the court finds generally for one party or the other, the losing party has no redress on error, except for the wrongful admission or rejection of evidence.

14. MUNICIPAL BONDS—VENDEE OF BONA FIDE HOLDER ACQUIRES HIS RIGHTS.

The transferee of a bona fide purchaser of negotiable municipal bonds acquires all the rights of his transferror, and may invoke every presumption and estoppel arising from their negotiability and from their recitals in support of their validity which the transferror might have relied upon, even though the transferee takes them after maturity with notice of all the alleged defenses.

15. COUPONS—PRESENTATION AT PLACE OF PAYMENT UNNECESSARY BEFORE SUIT.

The fact that coupons are made payable at a particular place does not make a presentation of them for payment at that place necessary before an action can be maintained upon them.

16. SAME—INTEREST.

Coupons upon municipal bonds draw interest from their maturity until the date of the entry of judgment upon them at the rate established by the law where they are payable.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of South Dakota.

On January 19, 1899, Crawford Livingston, the defendant in error, brought an action in the court below against the county of Hughes, in the state of South Dakota, the plaintiff in error, to recover the amount due upon coupons

cut from 56 bonds issued by that county, and dated July 6, 1891. In his complaint the defendant in error alleged: That on July 6, 1891, the county of Hughes, in compliance with laws of the state of South Dakota, and in conformity with the enactments recited in the bonds, issued 224 municipal bonds. That each of these bonds was in the following words and figures:

"Number ——.                    United States of America.                    $500.00.
          "State of South Dakota. Hughes County Funding Bond.

"Know all men by these presents, that the county of Hughes, in the state of South Dakota, acknowledges itself to owe, and for value received hereby promises to pay, to T. W. Pratt or bearer the sum of five hundred dollars (500.00), in lawful money of the United States of America, on the sixth day of July, A. D. 1911, or at any time after the sixth day of July, A. D. 1901, at the option of said county, with interest thereon at the rate of six per centum per annum, payable annually on the sixth day of July in each year, on presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest of this bond are payable at the Chemical National Bank, in the city of New York, and state of New York. This bond is one of a series of like tenor and date, numbered from 1 to 224, both inclusive, aggregating the sum of $112,000.00, and is issued by said county of Hughes for the sole purpose of funding the outstanding indebtedness of said county incurred for constructing a court house and jail, and is issued in pursuance of an act of the Eighteenth legislative assembly of the territory of Dakota, entitled 'An act authorizing and empowering organized counties of Dakota to erect county buildings for court house and jail purposes, and to issue and dispose of bonds to provide funds to pay therefor, and to provide for the payment of principal and interest of such bonds' [Laws Dak. T. 1889, c. 42], and in accordance with an election duly called and held on the second day of June, 1891, and it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of this series of bonds have been properly done, happened, and been performed in regular and due form, as required by law, and that the total indebtedness of said county, including this issue of bonds, does not exceed the constitutional and statutory limitations. In witness whereof (that) said county of Hughes, by its board of county commissioners, has caused this bond to be signed by the chairman of said board, attested by the county auditor of said county, and caused the seal of said county to be affixed hereto the sixth day of July, A. D. 1891.
          "[Signed]                                   John F. Hughes.
                    "Chairman of the Board of County Commissioners.
"Attest: Harry Ernest, County Auditor.
"Registered in my office according to law.
          "Thomas H. Green, County Treasurer."

That to each bond there were attached 20 interest coupons, for $30 each, payable at intervals of six months from the date of the bond, that these bonds and coupons were sold as commercial obligations of the county, and passed from purchaser to purchaser, until they were bought by the defendant in error. That, "at the time the said bonds of the defendant were issued and sold, the said defendant, through its officers, in order to facilitate the sale thereof to all persons who might then or thereafter purchase in open market the said obligations, prepared certificates and certified copies of the records of the defendant, duly made by its proper officers, showing the proceedings had and taken by the defendant with reference to the issue of said bonds, the purpose for which it was proposed to use the money, the amount of the indebtedness, the equalized assessed valuation, and generally all matters pertaining to the issuance of said bonds affecting their validity, showing by said certified copies and records the full right of the defendant to issue the same. Said bonds were all thereupon sold in open market to various persons, who were induced to purchase the same by reason of the recitals therein contained, and said certificates and certified copies, and the same were purchased in the ordinary course of business, before maturity, in good faith and for value, and by such purchasers in the same manner resold; and some time thereafter all of the bonds and coupons referred to in the several subdivisions of this

complaint were duly sold to this plaintiff in the ordinary course of business, and in good faith and for value, who likewise was induced to purchase the same relying upon the recitals therein contained and upon said certificates and certified copies"; and that the defendant in error, prior to the 1st day of July, 1895, in good faith and for value, in open market, before the maturity thereof, purchased the 56 bonds from which the coupons in suit were cut and the coupons themselves, and is the owner and holder thereof. That these coupons have never been paid, though payment thereof has been demanded of the plaintiff in error.

The county interposed a demurrer to this complaint, which was overruled, and then it answered. Its answer was an admission that the bonds had been issued by the county; a denial that the county ever had the power to issue them; and averments that it never had any outstanding indebtedness which was fundable under the act referred to in the bonds; that it never received any consideration for them; that they were issued to take up fictitious warrants, which were issued by its board of county commissioners without consideration, without authority, and without a compliance with the statutes; that none of the proceedings required to be taken to authorize the creation of a fundable debt or the issue of these funding bonds had ever been taken by the officers of the county; and that the records of the board of county commissioners, of the county treasurer, and of the county auditor of the county disclosed these facts. The case was tried without a jury, and the court made a general finding for the defendant in error, and entered judgment against the county.

At the trial the defendant in error proved the execution of the bonds by the proper officers of the county; his purchase of them for value in good faith, in the ordinary course of business, in reliance upon the recitals therein, and upon the opinion of an attorney at law. At the close of his evidence, a motion was made for judgment in favor of the county, and that motion was denied. The plaintiff in error offered the records of the county and the testimony of witnesses to show that the county never owed a debt fundable under the act recited in the bonds; that it never received any consideration therefor; that the bonds were issued to take up warrants which were issued by its board of county commissioners without any consideration, and were never delivered to any creditor; that the proposition submitted to the electors relative to the issuance of the bonds was not in accordance with the recitals therein contained or with the terms of the statute; that the county commissioners did not advertise the bonds for sale before they issued them, and that they did not register them, although the statutes of South Dakota required them to make such an advertisement and to register the bonds before they were issued. The court below rejected all this evidence, on the ground that the defendant in error was a bona fide purchaser of the bonds, and that the recitals estopped the county from showing their falsity to defeat his action against it. Every ruling, act, and omission of the court in the conduct of this case from the order overruling the demurrer to the order for judgment is challenged upon this writ of error. The main issues of law are presented by this statement. The grounds of the more minute specifications of error have not been set forth here, to avoid repetition, because they must be stated in the opinion where they are considered.

T. P. Estes (J. K. Lambert and C. E. De Land, on the brief), for plaintiff in error.

McNeil V. Seymour (H. R. Horner, R. W. Stewart, Edward C. Stringer, and W. P. Warner, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Many questions have been presented and argued by counsel in this case, but the main issue concerns the scope and effect of the estoppel in favor of an innocent purchaser raised by the recitals in the bonds

from which the coupons in suit were cut. These bonds were issued under an act of the 18th legislative assembly of the territory of Dakota entitled "An act authorizing and empowering organized counties of Dakota to erect county buildings for court house and jail purposes, and to issue and dispose of bonds to provide funds to pay therefor, and to provide for the payment of principal and interest of such bonds." Laws Dak. T. 1889, c. 42. That act empowered each board of county commissioners of certain counties of Dakota territory, one of which was the county of Hughes, to issue and sell the bonds of its county, upon a favorable vote of the electors thereof, for the purpose of purchasing the site for, and the erection of, a court house or jail, or both, whenever 'in the opinion of a majority of the board the county had insufficient or inadequate buildings for its use for a court house or jail, or both, authorized the board to let contracts for the erection of a court house or jail, or both, for the use of its county, and to have entire supervision of the construction of these buildings. It required the board, before the bonds were issued or delivered, to cause them to be advertised for sale at least once a week, for four successive weeks, in one of the leading newspapers published at the seat of government of the territory of Dakota (section 6); to cause them to be presented to the county clerk or auditor, and to be registered in a book kept by him, and known as the "Bond Register"; and to insert in each of the bonds this recital:

"Issued in pursuance of an act of the Eighteenth legislative assembly of the territory of Dakota, entitled 'An act authorizing and empowering organized counties of Dakota to erect county buildings for courthouse and jail purposes, and to issue and dispose of bonds to provide funds to pay therefor. and to provide for the payment of principal and interest of such bonds.'" Section 6. .

The act not only authorized the board of county commissioners to erect a court house and jail, to issue bonds to raise money to pay for them, and to sell the bonds, but it also provided that the board of any such county might issue and sell bonds to fund an indebtedness created for that purpose. The latter provision was in section 11 of the act, and it read in this way:

"Any county in this territory which has issued warrants or other evidence of indebtedness since January first, 1887, for the purpose of building a courthouse or jail or both may issue bonds under the provisions of this act to fund such warrants or other indebtedness and if such indebtedness was authorized by a majority vote of the qualified electors of such county previous to the incurring of the same; no new election shall be had and the board of county commissioners of any such county is hereby authorized and empowered when in the judgment of such board it is deemed to the best interests of such county to issue such bonds and to apply the proceeds solely to the redemption of such warrants or other evidences of indebtedness: provided, the bonds issued under the provisions of this section shall bear a lower rate of interest than the outstanding indebtedness proposed to be funded."

The bonds here in controversy were issued under this section of the act, and they contained not only the recital prescribed by the law, but a further certificate that they were issued in accordance with an election duly held thereunder, and that all acts, conditions, and things required to be done precedent to and in the issuing of the bonds had been properly done, happened, and been performed in regular and due

form, as required by law. Numerous attempts have been made by counsel for the county to escape from the effect of these recitals, and some of them will now be considered.

The great contention of the counsel for the plaintiff in error, as is customary in cases of this kind, is that the recitals are futile, because the county had no power to issue the bonds. The argument is: Counties which had incurred a debt for the erection of a court house or jail, or both, between January 1, 1887, and the date of the approval of the act of 1889, which was February 21, 1889, and those counties only, were authorized by that act to fund their debts. The county of Hughes had incurred no such debt, and was without power to fund any debt under this act. Therefore the recitals in its bonds could not estop it from denying this want of power, and could not create the power. The major premise of the syllogism is challenged by counsel for the defendant in error, who earnestly insist that the act of 1889 authorized counties to fund any debt for the construction of a court house and jail, whether it was created after the passage of this act or before its enactment. Conceding to the plaintiff in error, however, the soundness of this premise, their conclusion does not follow. Their argument ignores the vital distinction between that total want of power which no act or recital of the municipality can remedy, and the total failure to exercise or the inadequate exercise of a lawful authority. It ignores the essential difference between a total lack of power under the laws under all circumstances, and a lack of power which results merely from the absence of some precedent facts or acts which condition either the existence or the exercise of the power. The former, it is true, cannot be affected by the estoppel of recitals, but the latter may be. A municipality or a quasi municipality may not, by the recitals in its bonds, estop itself from denying that it is without power to issue them when the laws are such that there can be no state of facts or of conditions under which it would have authority to emit them. But if the laws are such that there might, under any state of facts or circumstances, be lawful power in the municipality or quasi municipality to issue its bonds, it may by recitals therein estop itself from denying that those facts or circumstances existed, and that it had lawful power to send them forth, unless the constitution or act under which the bonds are issued prescribes some public record as the test of the existence of some of those facts or circumstances. Board v. Sutliff, 97 Fed. 270, 277, 38 C. C. A. 167, 173; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 789, 792, 10 C. C. A. 637, 648, 651, 27 U. S. App. 244, 262, 265; Chaffee Co. v. Potter, 142 U. S. 355, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040; City of Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613, 40 L. Ed. 760; E. H. Rollins & Sons v. Board of Com'rs, 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399, 412; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593, 606; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 453, 31 C. C. A. 585, 589, 60 U. S. App. 78, 85, The exception to this rule need not be considered in this case, because neither the constitution of the state of South Dakota nor the act of 1889 pointed out any record as the test of any limitation or

condition of the existence or of the exercise of the power of this county to issue these bonds. On the other hand, the act of 1889 expressly requires the county officers to ascertain and to certify on the face of the bonds that they were sent forth in pursuance of the act which authorizes their issue. This case falls under the general rule. And it is a just and reasonable one. Recitals are inserted in municipal bonds for the express purpose of inducing buyers to purchase them in reliance upon the truth of the certificates they contain. Purchasers universally do so. Then the salutary rule steps in, that one who by his acts or representations, or by his silence when he ought to speak out, induces another to change his situation in reliance upon those acts or representations or upon that silence, so that a denial of their plain meaning or effect will injure the latter, is estopped from making such a denial, and that rule forbids the inequitable defense that the recitals in such bonds were not true. If the legal effect of recitals is merely to declare that a state of facts or circumstances existed under which the municipality had the power to issue the bonds, this is a just and reasonable rule, and it is and ought to be uniformly applied and enforced, because such facts and circumstances are peculiarly within the knowledge of the municipality and its officers, and without the knowledge of the purchasers of the bonds. On the other hand, if the laws are such that there can be no facts or circumstances under which the municipality could have the power to issue the bonds, the purchasers are charged with the knowledge of this state of the law. They cannot be deceived by recitals that the bonds were regularly or legally issued, because they must know that there was no way in which they could have been so issued, and in such a case recitals of this character constitute no estoppel in their favor against the municipality. In the case in hand the laws of South Dakota were such that there might have been a state of facts under which this county would have had the authority to issue these bonds. Under the general laws of that state, this county of Hughes had the power, before the act of 1889 was passed, to erect a court house and a jail, to incur a debt, and to issue warrants for that purpose. If it had done these things, it would have had a lawful debt, which the act of 1889 would have given it ample power to fund. Whether or not it had such a debt when these bonds were issued was a fact peculiarly within the knowledge of its officers, a fact concerning which the purchasers of its bonds would be likely to be densely ignorant. It was therefore exactly one of those facts conditioning the existence and exercise of its power that under all the decisions it had the right, and that it was its plain purpose, to put at rest by the recitals which the legislature authorized it to insert in its bonds. Those recitals, therefore, were not futile, for the reason that the county had no power to issue the bonds, because there might have been a state of facts under which the power would have existed, and a certificate to the effect that such a state of facts did exist estops the county from denying its existence, and from defeating the bonds on the ground that the certificate was false.

2. Another argument of counsel is that the board of county commissioners of this county was its agent, with authority clearly limit-

ed by the terms of the act and the general laws of the state; that an agent with limited authority may not, by recital or certificate that he has authority, create or enlarge his power; and that the board could not, by its certificate that a fundable debt existed, extend or enlarge its authority, and thereby estop the county. But this argument ignores the great principle upon which the effect of recitals in municipal bonds is based. That principle is that one may not vest in his agent the power to determine whether or not he has authority in a given case, and silently take the benefit of his decision and his act as agent, and then deny his authority, to the detriment of strangers who have innocently acted in the belief that his power was ample. It is that when a municipal body has lawful authority to issue bonds on the condition that certain facts exist or certain acts have been done, and the law intrusts the power to, and imposes the duty upon, its officers to ascertain, determine, and certify the existence of these facts at the time of issuing the bonds, their certificate will estop the municipality, as against a bona fide holder of the bonds, from proving its falsity to defeat them. National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 793, 10 C. C. A. 637, 651, 652, 27 U. S. App. 244, 266, 268; West Plains Tp. v. Sage, 69 Fed. 943, 948, 16 C. C. A. 553, 558, 32 U. S. App. 725, 736; E. H. Rollins & Sons v. Board of Com'rs, 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399, 412; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483, 49 U. S. App. 577, 589; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593, 606; Brown's Ex'x v. Ingalls Tp., 86 Fed. 261, 263, 30 C. C. A. 27, 29, 57 U. S. App. 611, 615, 616; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 453, 31 C. C. A. 585, 589, 60 U. S. App. 78, 85; Grattan Tp. v. Chilton, 97 Fed. 145, 148, 38 C. C. A. 84, 87; Commissioners v. Aspinwall, 21 How. 539, 16 L. Ed. 208; Bissell v. City of Jeffersonville, 24 How. 287, 16 L. Ed. 664; Moran v. Commissioners, 2 Black, 722, 17 L. Ed. 342; Meyer v. City of Muscatine, 1 Wall. 384, 393, 17 L. Ed. 564; Lee Co. v. Rogers, 7 Wall. 181, 19 L. Ed. 160; Pendleton Co. v. Amy, 13 Wall. 297, 305, 20 L. Ed. 579; City of Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809; Grand Chute v. Winegar, 15 Wall. 355, 21 L. Ed. 170; Lynde v. Winnebago Co., 16 Wall. 6, 21 L. Ed. 272; Marcy v. Oswego Tp., 92 U. S. 637, 23 L. Ed. 748; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Moultrie Co. v. Rockingham Ten-Cent Sav. Bank, 92 U. S. 631, 23 L. Ed. 631; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 59; Commissioners v. January, 94 U. S. 202, 24 L. Ed. 110; Warren Co. v. Marcy, 97 U. S. 96, 24 L. Ed. 977; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 424; Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124, 30 L. Ed. 323; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040. The act of 1889 required the board of county commissioners of this county to insert in these bonds when it issued them a certificate that they were issued in pursuance of this act. It thereby intrusted to them the power and imposed upon them the duty to ascertain, to determine, and to certify whether or not every fact and every act which conditioned the lawful issue of these bonds existed before they were

issued. The existence of a fundable debt was one of the facts without which no bond could be issued in pursuance of this law, and when this board certified that these bonds were so issued it acted clearly within the limits of its power, and in the discharge of a duty thrust upon it by the legislature of the state.

3. Attention is called to the fact that the canvassing board whose duty it was to determine whether the electors of Hughes county sustained the proposition to issue the bonds might, under the statutes of that state, have been composed of the county clerk or auditor and a majority of the county commissioners of the county, or of the county treasurer, the judge of the county court, and one county commissioner (Laws Dak. T. 1889, c. 42, § 3; Laws S. D. 1890, c. 84); and it is argued that the recitals in the bonds do not estop the county from showing that there was no valid election upon the proposition to issue them, because the board of county commissioners was not the canvassing board, and hence it was not its duty to determine the state of the vote upon that question. But it was the duty of that board, before it made the certificate which the statute required it to place in the face of these bonds, to ascertain and determine whether or not the electors of the county had voted to issue them. If the board was not itself empowered to canvass that vote, it was its duty to examine the return of the proper canvassing board, and to learn therefrom what the state of the vote was and upon what proposition it was cast. If a canvass and certificate of some other board was the only evidence from which the county commissioners could learn the result of the vote, the act of 1889 imposed upon it the duty to ascertain and determine whether or not that evidence existed, whether or not that canvass had been made and certified, whether or not the proposition upon which the vote was cast corresponded with the terms of the statute and the bond, and, when it certified that these bonds were issued in pursuance of the act of 1889, it certified that a legal proposition had been submitted to, and sustained by, the electors, and that a proper canvass and return of that vote had been made and filed in the appointed place. Brown's Ex'x v. Ingalls Tp., 86 Fed. 261, 263, 30 C. C. A. 27, 29, 57 U. S. App. 611, 615.

4. It is said that the recitals do not estop the county from showing that it had no indebtedness which could be funded under the act of 1889, because they contain no express statement of the existence of such a debt. But, under the laws of South Dakota, the board of county commissioners is the controlling body through which the county acts, contracts, sues, and is sued, and by which the county is governed. The general laws of that state invest it with the power and impose upon it the duty to make all orders respecting the property of the county, to levy the county taxes, to liquidate the county indebtedness (Comp. Laws Dak. § 592), to superintend the fiscal concerns of the county, to secure their management in the best manner, and to keep an account of the receipts and expenditures of the quasi municipality (section 593). It is a general rule that a recital by the officers of the county in a bond which they issue estops the municipal body from denying every fact connected with, or growing

out of, the discharge of the ordinary duties of such officers, which under the law they were required to ascertain and determine before they issued the bonds. Northern Bank v. Porter Tp., 110 U. S. 608, 610, 4 Sup. Ct. 254, 28 L. Ed. 258; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 793, 10 C. C. A. 639, 651, 652, 27 U. S. App. 244, 266, 268. The existence or nonexistence of a debt which might be funded under this act was a fact which the board of county commissioners of this county was required to learn and to know in the ordinary discharge of the duties of its office. No funding bonds could have been issued in pursuance of the act of 1889, unless there was a county debt of the character described in that act to be funded. The existence of such a debt was the first fact which the board was necessarily compelled to ascertain and determine before it issued the bonds and made the certificate which they contained, and its recitals that these bonds were issued in pursuance of that act is a plain certificate that they were issued in place of a just and valid indebtedness of the county, which the act of 1889 authorized that board to fund. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 57 U. S. App. 593; School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84, 27 L. Ed. 90; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Mercer Co. v. Hackett, 1 Wall. 83, 17 L. Ed. 548; Commissioners v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433, 28 L. Ed. 966; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803, 37 L. Ed. 673; City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Geer v. Board, 97 Fed. 435, 441, 38 C. C. A. 250, 256.

5. Another contention of counsel is that these recitals do not estop the county from showing that it had no fundable debt; that the proposition submitted to the vote of the electors did not conform to the statute or to the certificate in the bond; that the bonds were never advertised for sale; and that they were never registered in the office of the county clerk or county auditor, as required by the statute,—because all these facts appear by the books and records of the board of county commissioners and of the county clerk, and every purchaser was charged with notice of these records and the facts they disclosed. But as early as 1863 the supreme court declared: "When a corporation has power, under any circumstances, to issue negotiable securities, the bona fide holder has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper" (Gelpcke v. City of Dubuque, 1 Wall. 175, 203, 17 L. Ed. 520, 525); and in 1896, in City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 617, 40 L. Ed. 760, 763, that court, speaking to the question whether or not an innocent purchaser was required to go behind the statute and the certificate upon the face of the bond to ascertain whether a proper ordinance or resolution had been passed or record made to authorize its issue, said:

"As therefore the recitals in the bonds import compliance with the city's charter, purchasers for value, having no notice of the nonperformance of the conditions precedent, were not bound to go behind the statute conferring the

power to subscribe, and to ascertain, by an examination of ordinances and records of the city council, whether those conditions had in fact been performed."

In Board of Com'rs v. National Life Ins. Co., 90 Fed. 228, 231, 32 C. C. A. 591, 594, 61 U. S. App. 53, 58, after reviewing some of the cases upon this subject, this court announced its conclusion in these words:

"The result is that the recital in the bonds before us that they were issued in accordance with the provisions of the statute imports that they were issued in pursuance of a lawful and proper resolution and of honest and just action on the part of the board of county, commissioners under that statute. It relieves the innocent purchaser of all inquiry, notice, and knowledge of the actual action and record of the board, and estops the county from denying that proper action was taken, and that a lawful resolution was passed."

This proposition has been repeatedly affirmed by this court, and is no longer open to debate. National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 10 C. C. A. 637, 651, 27 U. S. App. 244, 266; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483, 49 U. S. App. 577, 589; Board of Com'rs v. National Life Ins. Co., 90 Fed. 228, 231, 32 C. C. A. 591, 594, 61 U. S. App. 53, 58; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 453, 31 C. C. A. 585, 589, 60 U. S. App. 78, 85; Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 237, 32 C. C. A. 600, 61 U. S. App. 51; Board v. Heed, 41 C. C. A. 668, 101 Fed. 768; Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229, 34 U. S. App. 680, 684. The legal effect of the recital that these bonds were issued in pursuance of the act of 1889 was that they were issued to fund a valid debt of the county of the character described in section 11 of that act; that a lawful proposition for their issue had been submitted to and sustained by the favorable vote of the electors of the county; that the bonds had been duly advertised for sale; that they had been properly registered; and that every other fact existed, and every other act had been done, which under the act of 1889 conditioned a lawful issue of the bonds.

In the consideration of these questions, our attention has been called again to the argument that the conclusion which we have now reached opens wide the door for faithless officials to issue unauthorized bonds of their municipality. The argument is that courts should require innocent purchasers to presume that the authorized recitals and certificates of public officials are false; that the debts which they declare are just obligations of their municipalities are void; and that they should impose upon such purchasers the duty to examine the antecedent records and proceedings of these officers to ascertain whether or not these debts are valid. The argument is suicidal. If it is the duty of an innocent purchaser to presume that the lawful certificate of public officials in the face of bonds is false, and to look to the records and proceedings of those officials to ascertain whether or not it is true, by the same mark it must be equally the duty of such a purchaser to presume that the records and proceedings are also false, and that wherever they disclose no valid debt they falsely disclose that fact, and the truth is that a valid debt exists. If this presumption of falsity is to obtain, the result will be the same, and the

debt will be presumed to be valid because the records show it to be void. The truth is that this contention is unworthy of serious consideration. The great majority of municipal officers are upright, honest, and watchful of the public welfare. The actions of honest and faithful officials must not be subjected to the suspicions which fit only those who are dishonest and faithless. Contracts cannot be made and enforced, courts cannot administer justice, business cannot be transacted upon any other presumption than that private citizens and public officials alike are innocent of wrong and faithful to their trusts until they are proved to be faithless. In the consideration of the validity of contracts of municipalities, the fact must not be overlooked that municipal officers are not the agents of the purchasers of bonds. They are the agents of the municipalities. They are not selected by the creditors of the city or of the county they represent, nor by the courts, but they are chosen by the municipalities themselves. If there is danger that such officers will violate their oaths, and corruptly barter away the rights of the people whom they represent, through the abuse of rules of action which have been established for the guidance of honest men and faithful officials, the remedy is not the punishment of innocent creditors who have purchased the negotiable securities of municipalities upon the faith of the acts of their officers, which were generally known to and acquiesced in by their citizens. It is in the election by those citizens of honest men and faithful officials.

Section 5, art. 13, Const. S. D., provides that any city, county, town, school district, or other subdivision incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due. It is said that the bonds here in question are void because no such provision was ever made for the collection of any tax to pay the interest or principal of the original debt which was funded by the bonds, or the interest or principal of the bonds themselves. There are two answers to this proposition. The first is that the certificate that the bonds were issued in pursuance of the act of 1889 is a certificate that the provision for the collection of the annual tax required by the constitution which the board of county commissioners that made the certificate was authorized to make had been already made. National Life Ins. Co. v. Board of Education, 62 Fed. 778, 791, 10 C. C. A. 639, 652, 27 U. S. App. 244, 260; Board v. Sutliff, 97 Fed. 270, 276, 38 C. C. A. 167, 172; Dudley v. Board, 80 Fed. 672, 676, 677, 26 C. C. A. 82, 86, 87, 49 U. S. App. 336, 344, 345; Board of Com'rs v. E. H. Rollins & Sons, 173 U. S. 255, 273, 274, 19 Sup. Ct. 390, 43 L. Ed. 689. Another answer is that the certificate in the bonds is conclusive that there was a just debt to be funded, and the issue of bonds to fund this debt neither created nor increased the indebtedness of the county, but simply changed its form, so that no provision was required to be made, under the constitution, for an annual tax to pay the refunding bonds or their interest. Board v. Platt, 79 Fed. 567, 569, 25 C. C. A. 87, 89, 49 U. S. App. 216, 220; E. H. Rollins & Sons v. Board of Com'rs, 80 Fed. 692, 698, 26 C. C. A. 91, 98, 49 U. S. App. 399, 411; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 278,

30 C. C. A. 38, 44, 57 U. S. App. 593, 605; Lyon Co. v. Keene Five-Cent Sav. Bank, 40 C. C. A. 391, 100 Fed. 337, 339.

7. Nor is it any defense to these bonds in the hands of an innocent purchaser that the warrants which they were issued to retire were fraudulent and void, that the apparent debt which they were issued to pay was fictitious, and that their proceeds were diverted from the lawful purpose specified in the bonds to illegal and useless ends. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 275, 277, 30 C. C. A. 38, 41, 43, 57 U. S. App. 593, 600, 603; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 785, 10 C. C. A. 637, 644, 27 U. S. App. 244, 256; West Plains Tp. v. Sage, 69 Fed. 943, 946, 16 C. C. A. 553, 557, 32 U. S. App. 725, 733; Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 224, 32 C. C. A. 585, 587, 61 U. S. App. 41, 45; Board v. Howard, 83 Fed. 296, 298, 27 C. C. A. 531, 533, 49 U. S. App. 642, 645; Board of Com'rs v. Society for Savings, 41 C. C. A. 667, 101 Fed. 767.

8. It is assigned as error that the demurrer to the complaint in this action should have been sustained because it contains no averments that a fundable debt existed when the bonds were issued, or that any of the antecedent proceedings required by the act of 1889 had been taken; because it shows that certified copies of certain proceedings showing the right of the county to issue the bonds had been presented to, and relied upon, by the purchaser, the defendant in error, when he bought them; because the bonds appear on their face to be nonnegotiable; and because the complaint contains no averment that the defendant in error bought them without notice of their defects. The complaint contains an allegation that the bonds were issued in pursuance of, and in conformity with, the act of 1889, which is recited therein. We have purposely considered the effect of the recitals in the bonds, and reached the conclusion that in the hands of an innocent purchaser they estop the county of Hughes from denying that they were issued to replace such a debt as it was authorized to fund under the eleventh section of the act, and from denying that all the facts existed, all the acts were done, and all the conditions were complied with which were required to constitute an issue of these bonds in accordance with the provisions of this act and the general laws of the state of South Dakota. These conclusions dispose of the objection that the complaint does not plead these precedent facts, acts, and conditions. It pleads the bonds, and the recitals they contain, and those facts, and the fact that the defendant in error was an innocent purchaser, constitute a good cause of action. The objection that the complaint is insufficient, because it contains an allegation that certified copies of the records, showing the proceedings taken by the county with reference to the issue of the bonds, were issued by the county, and that the defendant in error was induced to purchase by the recitals in the bonds and these certified copies, is untenable, because it does not appear from the complaint that the records of the defendant were in any way irregular or insufficient to authorize the issue of the bonds, and it does appear that the copies of the records which it is alleged the defendant in error examined disclosed a right in the defendant to issue the bonds. Nor is the objec-

tion that the bonds were nonnegotiable, or the objection that the complaint contains no allegation that the defendant in error purchased them without notice of any defects therein, entitled to more extended consideration. It is said that the bonds are not negotiable because they are payable on the 11th day of July, A. D. 1911, or at any time after the 6th day of July, A. D. 1901, at the option of the county. A promissory note payable on or before a certain day is a negotiable instrument, and a fortiori a promissory note or a municipal bond payable after a certain day, and on or before a more distant date, is equally negotiable. Simonton, Mun. Bonds, pp. 125, 126, § 103; 1 Daniel, Neg. Inst. (4th Ed.) § 43. The defendant in error alleged in his complaint that he purchased these bonds in good faith for value, in open market, before the maturity thereof, in reliance upon the recitals therein contained, and the certified copies of the records showing the full right of the defendant to issue them. This is a sufficient allegation that he purchased them without notice of any defect therein. How could he have purchased them in good faith if he purchased with knowledge or notice of the gigantic fraud upon which the defendant alleged they are founded? Attention is also called to the fact that it appears from the complaint that the bonds were registered in the office of the county treasurer, while the law required them to be registered in the office of the county auditor or county clerk. The act of 1889 required the board of county commissioners to see that these bonds were registered in the office of the county auditor or county clerk before they were issued, and its recital that they were issued in pursuance of that act was a certificate that they were registered in the proper office, which the county was estopped from denying. The fact that they were also registered in the office of the county treasurer could not detract from their validity, and the averment of the fact constituted no objection to the complaint. The demurrer was properly overruled.

9. It is assigned as error that the court denied the motion of the plaintiff in error for judgment in its favor at the close of the case of the defendant in error, and that at the close of the trial it made a general finding in his favor on the ground that he was a bona fide purchaser of the bonds for value, without notice of their invalidity. The first objection was waived by the fact that the plaintiff in error introduced evidence in support of its defense. The second is foreclosed by the fact that the court made a general finding for the plaintiff in error, so that the questions of fact which the evidence presents are not before us for consideration. Any error in a refusal to grant the motion of a defendant to enter judgment in his favor at the close of the plaintiff's evidence is waived by the action of the defendant in subsequently introducing evidence on his own behalf and proceeding to the trial of the case on its merits. Railway Co. v. Chambers' Adm'x, 68 Fed. 148, 149, 15 C. C. A. 327, 329, 32 U. S. App. 253, 256; Insurance Co. v. Frederick, 58 Fed. 144, 147, 7 C. C. A. 122, 125, 19 U. S. App. 24, 31. Where a jury is waived, and there is testimony raising a controversy, and the court finds generally for one side or the other, the losing party has no redress on error, except for the wrongful admission or rejection of evidence. O'Hara v. Railroad Co.,

76 Fed. 718, 719, 22 C. C. A. 512, 513, 40 U. S. App. 471, 473; Key West v. Baer, 66 Fed. 440, 13 C. C. A. 572, 30 U. S. App. 140; Lehnen v. Dickson, 148 U. S. 71, 77, 13 Sup. Ct. 481, 37 L. Ed. 373; Walker v. Miller, 59 Fed. 869, 8 C. C. A. 331, 19 U. S. App. 403; Searcy Co. v. Thompson, 66 Fed. 92, 13 C. C. A. 349, 27 U. S. App. 715; Insurance Co. of North America v. International Trust Co., 71 Fed. 88, 17 C. C. A. 616, 36 U. S. App. 291; Association v. Robinson, 74 Fed. 10, 20 C. C. A. 262, 36 U. S. App. 690. These rules of practice dispose of the propositions that the defendant in error was not a bona fide purchaser without notice; because he pleaded in his complaint that he relied upon the certified copies of the records of the proceedings of the county upon which the bonds were founded, because he testified that after default in the payment of some of the coupons he paid for the bonds with checks, because he testified that he repurchased bonds to the amount of about $5,000 from a friend to whom he had sold them, and because the bonds were not presented for payment to the bank in New York where they were payable by their terms. But a perusal of the evidence has satisfied us that there was no merit in these objections in any event. The averment in the complaint that the plaintiff relied upon the certified copies of the records also alleged that these copies disclosed full power in the county to issue the bonds. This allegation was denied by the answer. The defendant in error introduced no evidence in support of it. His proof was confined to the introduction of the bonds, and the testimony of the defendant in error and his vendor to the effect that they each purchased them in good faith, without notice of any defects in them, in reliance upon the recitals contained in the bonds and the opinion of an attorney to whom the vendor had referred them for examination. The effect of this evidence was to leave the certified copies of the records as though they had never been pleaded, and the defendant in error without notice of anything which they may have disclosed. The contention that the defendant in error was not a purchaser for value, because he paid for the bonds with checks, is not only untenable, but trivial. It is undoubtedly true that a payment by check is not a payment in money unless the check is paid. But a check is a contract to pay money, and a purchase by a good promise to pay money is as much a purchase for value as a purchase by the payment of the actual currency. The testimony of Livingston that he had paid for these bonds by his checks is sufficient evidence to warrant a finding that he paid value for them. The fact that the defendant in error bought back some of the bonds after a default in payment of some of the coupons does not deprive him of the shield of an innocent purchaser. He first bought the bonds in good faith, for value, before maturity, and his vendor had bought them before him in the same way. Each of them was an innocent purchaser of the securities. The defendant in error subsequently sold 10 of the bonds to a friend, and after default was made in the payment of the interest he repurchased them. But a transferee from a bona fide purchaser of negotiable municipal bonds takes all the rights of the transferror, and may invoke every presumption and estoppel from their negotiability and their recitals, in support of their validity, which the trans-

ferror might have relied upon, although the transferee takes them after maturity, with notice of the alleged defenses. Board v. Sutliff, 38 C. C. A. 167, 97 Fed. 270, 273; E. H. Rollins & Sons v. Board of Com'rs, 80 Fed. 692, 700, 26 C. C. A. 91, 99, 49 U. S. App. 399, 413; Commissioners v. Bolles, 94 U. S. 104, 109, 24 L. Ed. 46; Commissioners v. Clark, 94 U. S. 278, 286, 24 L. Ed. 59; Board of Com'rs v. E. H. Rollins & Sons, 173 U. S. 255, 275, 19 Sup. Ct. 390, 43 L. Ed. 689; Rathbone v. Board, 83 Fed. 125, 130, 27 C. C. A. 477, 482, 49 U. S. App. 577, 588; Hill v. Scotland Co. (C. C.) 34 Fed. 208; 1 Daniel, Neg. Inst. (4th Ed.) § 803. The fact that the bonds and coupons were not presented for payment at the bank in New York where by their terms they were payable was immaterial. There was no claim that the county had ever paid them, or endeavored to pay them; no claim that it had ever placed the money at the bank in New York to be applied to their payment. In this state of the case, the plaintiff was not required to go through the useless ceremony of presenting his coupons where there was nothing to pay them before he commenced his suit for the default of the county. The fact that coupons are made payable at a particular place does not make a presentation for payment at that place necessary before an action can be maintained upon them. Wallace v. McConnell, 13 Pet. 136, 10 L. Ed. 95; Walnut v. Wade, 103 U. S. 683, 695, 26 L. Ed. 526.

10. It is assigned as error that substantially all the evidence which was offered by the plaintiff in error to show that there never was any fundable debt of the county for which the bonds could have lawfully been issued; that the county warrants for which they were issued were never delivered, were made without consideration, and were not even an apparent compliance with the provisions of the statutes; that the bonds were never delivered to any purchaser; and that no consideration for them was ever received by the county,—was rejected by the court below. The chief reason why counsel for the plaintiff in error insist that this ruling was error, viz. that all this evidence was competent and material to show that the bonds were illegally issued and void notwithstanding the recitals which they contained, has already been considered and overruled. This assignment of error cannot be sustained on that ground. It remains to consider a few minor suggestions and arguments in support of it. It is said that the court erred because it refused to permit the plaintiff in error to show that the bonds in suit were never delivered to any purchaser by the county or its officers. But the answer admits that the bonds were issued by the county, and alleges that they were issued fraudulently, and without authority of law, for the pretended purpose of canceling certain county warrants. In the face of the admission of the issue of the bonds, and of the proof which was then in the case that they had been bought by the defendant in error in good faith, in the ordinary course of business, it was neither competent nor material to show whether the county delivered the bonds to a purchaser, a broker, or one of its own officers when it issued them. There was no plea that they had been stolen from it, and, in the absence of any such defense, the presumption was then conclusive that they had been issued with the consent of the county.

104 F.—21

It is contended that the records of the proceedings of the board of county commissioners and the records of the county officers were competent to show what the certified copies were upon which the defendant in error alleged in his complaint that he relied. But the position is unsound, because the certified copies were not produced or demanded, because the defendant denied that it had ever furnished them, and that the defendant in error relied upon them. No proof had been adduced to overcome that denial, and the defendant in error had testified that he had relied upon the recitals in the bonds and the opinion of a solicitor in purchasing them. In this state of the evidence, he was not chargeable with notice of the contents of the records, nor were they competent to rebut or explain anything which he had pleaded or proved.

11. The coupons were payable in the state of New York, and the legal rate of interest in that state was 6 per cent. The legal rate of interest in the state of South Dakota was 7 per cent. The court rendered judgment for the amount of the principal of the coupons, and interest thereon at 7 per cent. The defendant in error subsequently remitted an amount equal to the difference between the interest at 6 per cent. and the interest at 7 per cent., and the court below directed the modification of the judgment in accordance with such remission. It is assigned as error that the court erred in thus reducing the judgment, and that it erred in allowing any interest at all. The defendant in error had the right to satisfy the judgment below in whole or in part, and it is not perceived how the action of the court below directing the judgment to be modified in accordance with the partial satisfaction which the defendant in error filed could have been erroneous. But, in any event, it was not prejudicial to the county, and error without prejudice is no ground for reversal. There was no error in the allowance of interest on the coupons from their maturity until the date of the entry of the judgment at the rate established by law in New York, where they were payable. Scotland Co. v. Hill, 132 U. S. 107, 117, 10 Sup. Ct. 26, 33 L. Ed. 261. The judgment below is affirmed.